Filed Oct. 28, 1886.

———————

No. 11,258.

PFAFF, AUDITOR, ET AL. *v.* THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY.

TAXES.— *Valuation and Assessment of " Railroad Track."—State Board of Equalization.*—Under the revenue acts of this State, the State board of equalization has exclusive authority to value and assess the railroad property denominated " railroad track" and " rolling stock." Section 6410, R. S. 1881.

SAME.—*Right of Way.—Improvements.*—The right of way, with the improvements upon it, is to be valued and assessed as "railroad track." Section 6362, R. S. 1881.

SAME.— *What Term "Right of Way" Includes.*—The term "right of way" is not limited to a strip of land of any definite width at all points on the line of a railroad, but includes lands and lots acquired for necessary side tracks and turnouts, and the improvements thereon in the way of coal sheds, freight houses, water-tanks, repair shops, round-houses, and the like.

RAILROAD.—*Power to Acquire and Hold Real Estate.*—Railroad companies may acquire and hold land other than that occupied by their tracks.

From the Marion Superior Court.

*C. S. Denny, W. W. Woollen* and *I. Klingensmith,* for appellants.

*B. Harrison, C. C. Hines, W. H. H. Miller* and *J. B. Elam,* for appellee.

ZOLLARS, J.—Appellee owns, and for a number of years has owned, some small tracts of land, and some lots and parts of lots in the city of Indianapolis, aggregating about twelve acres. The purposes for, and the manner in which those lands and lots are and have been used, are stated in the complaint as follows:

" Plaintiff shows, that upon the above described portion of block 94, is situated its freight house, through which two tracks run, and on each side of which there are tracks belonging to plaintiff, connected with its main line of track situate on Louisiana street in said city of Indianapolis; that upon said part of out-lot 135, plaintiff has constructed a round-house for its locomotives, a small shop for repairing locomotives, a coal shed, a wood shed, and some water-tanks; that the balance of said out-lot 135, together with all the other real estate above described, except a portion of block 94, is occupied by the main track, and side tracks of this plaintiff, and is used exclusively for track purposes."

It is further alleged in the complaint, that in 1880 and 1881, the railroad company made return of its main track, and all of said side tracks upon the said lands and lots, to the State board of equalization, and that that board valued and assessed the same for taxation, consisting of $\frac{56}{100}$ of a mile of main, and eight $\frac{15}{100}$ miles of side tracks, including the lands and lots upon which they were situated, and all the improvements thereon, as "railroad track;" that upon the valuation thus made by the State board, the respective

officers of Marion county, and of the city of Indianapolis, extended all taxes levied by the county and city respectively, and that the taxes so levied had been paid.

It is still further alleged, that notwithstanding the assessment as above stated, and the payment of the taxes, the county and city, by their local assessors and officers in each of said years, made an assessment of the above described lots and lands, together with the improvements, and levied taxes thereon, claiming that they are not included in the term "railroad track," and that, therefore, they may be assessed and taxed by the county and city authorities as other lands are assessed.

The railroad company having refused to pay the taxes so assessed by the local authorities, the lots and lands were sold by those authorities. This action against the proper city and county officers, and the purchaser at the tax sale, is to enjoin the execution of a deed to the purchaser, to enjoin any further attempt to collect such taxes, and to quiet its title to the lots and lands.

The question presented by the record is, are the lots and lands so occupied with tracks, side tracks, and buildings, to be valued and assessed by the State board of equalization as "railroad track," or may they be valued and assessed by the county and city authorities as other lands are assessed?

The answer to this question is dependent upon the construction to be given to our revenue laws. As there is no material difference between the revenue acts of 1872 and 1881, so far as they affect the question under examination, we shall make reference only to the act of 1881, and to the sections as numbered in R. S. 1881.

It is very plain, that under the revenue acts, the State board of equalization alone has authority to value and assess the railroad property, denominated "railroad track" and "rolling stock." Section 6410.

The important question here is, what is included in the term "railroad track?" Does that term include the lands

described in the complaint, being small tracts of land and lots which are occupied by the side tracks, turnouts, round-house, a small repair shop, coal and wood sheds, water-tanks and turn-tables, etc. ?

Section 6362 provides, that " Such right of way, including the superstructures, main track, side or second tracks, and turnouts, turn-tables, telegraph poles, wires, instruments, and other appliances, and the stations and improvements of the railroad company on such right of way (except machinery, stationary engines, and other fixtures, which shall be considered personal property), shall be held to be real estate for the purpose of taxation, and denominated ' railroad track,' and shall be so listed and valued, and shall be described in the assessment thereof as a strip of land extending on each side of such railroad track, and embracing the same, together with all the stations and improvements thereon, commencing at a point where such railroad track crosses a boundary line in entering the county, township, city, or town, tending to the point where such track crosses the boundary line leaving such county, township, city, or town to the point of termination in the same, as the case may be, containing —— acres, more or less (inserting name of county, township, city, or town, or boundary line of same, and number of acres and length in feet) ; and when advertised or sold for taxes, no other description shall be necessary to convey a good title to the purchaser."

This section provides, that the right of way, with whatever is upon it in the way of improvements, is to be valued and assessed as " railroad track."

If a depot building, round-house, machine shop, coal or wood sheds, or water-tank, is upon the right of way, they become a part of the " railroad track," and are to be valued and assessed by the State board of equalization, and can not be valued and assessed by the county or city authorities, as separate and apart from the " railroad track."

The more specific inquiry here is, do the lots and lands

described in the complaint, and occupied as therein described, constitute a part of the right of way?

The term "right of way" is not limited by any statutory definition, nor by any statutory provision, to a strip of land of any particular and definite width at all points on the line of the railroad. As applied to a railroad company, it means a way over which the company has the right to pass in the operation of its trains. *Williams* v. *Western, etc., R. W. Co.*, 50 Wis. 71, 76.

A railroad can not be operated with anything like success with a single track. It is necessary to have either a double track, or turnouts and side tracks, in order that trains going in opposite directions may pass. It is just as necessary that there shall be turnouts and side tracks for the making up of trains, the changing of engines, the replenishing of them with water and fuel, and the loading and unloading of freight.

With many of the more important lines, it is often necessary to have many of such turnouts and side tracks, in order that the business may be done with dispatch, in obedience to the demands of commerce and traffic. These side tracks, such as are required at commercial centers, and the larger cities and towns, could not be crowded upon a narrow strip of land, such as may be sufficient between stations. In order that the company may have the requisite amount of such side tracks at such points, it is necessary that it shall have a right of way over a sufficient amount of land upon which to lay and operate them. This right of way the company may acquire by condemnation proceedings, if necessary, R. S. 1881, section 3907.

When such right of way is acquired, by whatever means, the land thus acquired becomes a part of the company's right of way, and thus a part of the "railroad track," as much as that portion occupied by the main track. It seems reasonable, therefore, that the person, or body of persons, who value and assess the one, should value and assess the other. The main track, in connection with such side tracks, make up

the one system and property. To destroy one, will greatly cripple and reduce the value of the other. The side tracks, and the land upon which they are located, will have a value, measured by the value of the land as land, and the value of the side tracks and improvements thereon, and these all together will add to the value of the whole line in proportion as they afford facilities for the transaction of business over that line. The State board of equalization could not well fix a just valuation upon the railroad without a knowledge of such facilities. And hence the statute requires the railroad company to furnish, annually, a sworn statement to the county auditors of the several counties through which the road may run, of the amount of the main, and all second tracks, side tracks, and turnouts, in the county. The amount of each thus reported to the auditors, they are required to report to the auditor of state. Section 6407.

The statute also requires that the railroad company shall report to the auditor of state the length of the main track, side or second tracks, turnouts, and the number and quality of buildings or other structures on "railroad track," showing the proportion in each county and township. Section 6369.

Both of these statements, thus received, the auditor of state is required to lay before the State board of equalization. Section 6371. If that board is not to value and assess the side tracks, turnouts, etc., the reporting of them would be an idle ceremony, except as they may be considered in fixing the value of the main line. All of the tracks thus reported are to be valued and assessed by that board as "railroad track," and for the purpose of arriving at a just valuation, it may examine persons and papers if necessary. The amounts determined and assessed upon those two items of railroad property, denominated "railroad track," are to be certified by the auditor of state to the auditors of the several counties, and they distribute the value, so certified, to the several townships, cities and towns, in their counties, which are entitled to

a proportionate value of such "railroad track," and compute and extend taxes against such values. Section 6410.

Section 6363 more explicitly declares how the values so assessed shall be apportioned, by providing that the value of the "railroad track" shall be listed and taxed in the several counties, townships, cities and towns, in the proportion that the length of the main track in such county, township, city or town bears to the whole length of the road in this State; except the value of the side or second tracks, all turnouts, etc., shall be taxed in the county, township, city or town in which the same are located.

Thus, the county, township, city or town gets its proportion of the taxes assessed upon the main line, and the whole of the taxes assessed upon the side tracks and turnouts, and the land upon which they and other improvements are located, to the extent that such side tracks, etc., are located in the county, township, city or town.

It is argued that the portion of the above section, providing that the value of such side tracks, etc., shall be taxed in the county, township, city or town where located, authorizes the valuation and taxation of the lands upon which the side tracks are laid, together with the other improvements thereon, by the local authorities.

That conclusion does not result from the language of the section, and to give the section the construction contended for, would bring it in conflict with the spirit of the act, and, as we think, lead to confusion in the valuation and assessment of railroad property of the character here under consideration.

Section 6364 also provides that the property denominated "rolling stock" shall be listed and taxed in the several counties, townships, cities and towns, but that such "rolling stock" is to be valued and assessed by the State board of equalization, is beyond question.

Here, as we have seen, the land and lots are occupied by side tracks and turnouts, which are used in the operation of

the road.   Upon these lands and lots there are also coal and wood sheds, a freight house, water-tanks, a small repair shop and a round-house.   Without going beyond the case to determine what might be the rule as to shops, etc., differently located, it is enough here that the buildings and improvements are all upon lands and lots which are a part of the right of way, and that such right of way, together with all super-structures and tracks, etc., thereon, is " railroad track," to be valued and assessed by the State board of equalization, and can not be valued and assessed by the local authorities.   In this conclusion we are sustained by the adjudications upon similar statutes.

It is claimed in argument, that our statute for the taxation of railroad property is a copy of the Illinois statute upon the same subject.   However that may be, it is in every material feature the same as the Illinois statute, and hence the adjudi-cations by the Supreme court of that State, upon its statute, are entitled to weight in the construction of our statute.

The exact question here involved was decided in the case of *Chicago, etc., R. R. Co.* v. *People, ex rel., etc.,* 98 Ill. 350. The railroad company occupied thirty-two acres of land, with side tracks, turnouts, etc., which were used in the making up of trains, receiving and discharging freight, etc., in the transaction of the company's business.   The ground was also used for car shops, machine shops, blacksmith shops, foundry, round-house, freight depot, stock yards, paint shop, etc.   It was held that the ground thus occupied was a part of the right of way, and hence " railroad track," and that such " railroad track," with all the buildings thereon, is to be valued and assessed by the State board of equalization, and not by the local authorities.

We quote from the decision in that case the following: " These shops are, doubtless, necessary, to insure a successful operation of the railroad; but whether they are or not is not important, as the revenue law anticipated that such struct-ures would be erected on the company's right of way, and

made express provision, when that was done, that they should form a part of the right of way and be taxed as such. This is apparent from section 42, which declares that the right of way, including superstructures of main, side or second track, and turnouts, and the station and *improvements* of the railroad company *on such right of way,* shall be real estate for the purpose of taxation, and denominated 'railroad track.' The fact, then, that the company has erected and is using shops on this land for the purpose of right of way, does not, in the least, militate against the view that the land is held for right of way. Inasmuch as the exclusive power to assess railroad track and rolling stock has been conferred on the State board of equalization, there seems to be no reason whatever why the power of assessment of property situated as is the property in controversy, should be conferred on the township assessors. The State board has many facilities for making a correct and just assessment which the township assessor can not have. Under section 109 it has power to examine persons and papers where it may be necessary to reach a correct result. The locality where the property is situated gains nothing by an assessment made by the local assessor. Whether the assessment is made by the township assessor, or by the State board under section 43 of the revenue act, the value of side tracks and turnouts, station houses, depots, machine shops, or other buildings belonging to the road, shall be taxed in the county, town, village, district or city in which the same are located, thus giving the locality where the property is situated the benefit of the taxes to be collected from such property, whether it is assessed by the local assessors or by the State board of equalization." See, also, *Chicago, etc., R. W. Co.* v. *Miller,* 72 Ill. 144; *Chicago, etc., R. R. Co.* v. *People, ex rel., etc.,* 99 Ill. 464; *State Railroad Tax Cases,* 92 U. S. 575; *Union Pacific R. W. Co.* v. *Cheyenne,* 113 U. S. 516; *Northampton County* v. *Lehigh Coal, etc., Co.,* 75 Pa. St. 461; *Toledo, etc., R. R. Co.* v. *City of Lafayette,* 22 Ind. 262.

Our statute provides, that all real estate of a railroad company, other than that denominated "railroad track," with all the improvements thereon, shall be assessed by the local authorities. Sec. 6366. It is claimed by counsel for appellant that railroad companies can not hold real estate, other than such as is described in the complaint, and such as may be occupied by the main track, and that, hence, the real estate, other than "railroad track," mentioned in the above section, must be such as that described in the complaint. In all this we think counsel are mistaken. Railroad companies may acquire and hold land other than that occupied by their tracks. R. S. 1881, sections 3900, 3901 ; *Toledo, etc., R. R. Co.* v. *City of Lafayette, supra.*

In the answer to appellee's complaint, it is alleged, that in fixing the values, the State board of equalization took into consideration only the tracks, and did not consider the value of the lots and lands, and the buildings thereon ; and that the local authorities valued and assessed these. It is claimed that because of the alleged omission on the part of the State board, the local authorities had the right to make the valuation and assessment ; and that if they had not, the appellee can not succeed in this action, without first paying, or offering to pay, the taxes due. The difficulty with the contention is, that, so far as shown, appellee had paid all taxes that, in any legal sense, were due. The authority to value and assess the lots and lands, which constitute a part of the right of way, or " railroad track," was and is with the State board of equalization alone.

The local authorities have no power to value and assess such property, and any valuation or assessment that they may attempt is utterly void. The railroad company can owe no taxes upon such property, except such as may be extended upon the valuation fixed by the State board.

It is to be presumed that the State board will do its duty, and value the whole of the right of way, including the land, the tracks and superstructures, as it is alleged in the com-

plaint was done; but if it should fall short of its duty, as alleged in the answer, the local authorities have no power to do what that board, under the law, is alone authorized to do.

The city further relies upon a section in the general act for the incorporation of cities. Section 3156, R. S. 1881. That section is an amendment of section 58 of the act of 1867, and was passed and approved on the 7th day of March, 1873. So far as material here, the amended section provides that cities, through or into which a railroad may pass, may assess any railroad building, fixtures, and machinery connected therewith, within the city limits, on the same basis and in the same manner that like property of natural persons is assessed, and collect the taxes thereon as other taxes are collected.

Whatever might have been said as to the authority of cities, under that section, in the absence of other legislation, to value and assess buildings situated upon the right of way of a railroad company, it is clear that under subsequent legislation, such authority does not exist. In 1875 an act was passed providing that thereafter the general laws of the State for the assessment of taxes should apply to all incorporated cities not having special charters, so far as the same should be applicable. Acts Regular Session 1875, p. 148; R. S. 1881, section 3263.

As to the assessment and taxation of railroad property, there is no difficulty in applying to cities the general laws of the State for the assessment of taxes. And the result of such an application is, that the city authorities must take the valuation of the right of way of railroad companies from the State board of equalization, and have no more authority to value and assess buildings on such right of way than have the county authorities. Such authority does not exist with either.

In overruling appellant's demurrer to the complaint, and

in sustaining appellee's demurrer to the answer, the court below ruled in accordance with this opinion.

The judgment is, therefore, affirmed, at appellants' costs.

