MYRON H. BUDNICK AND SANDRA A. BUDNICK *v.* INDIANA NATIONAL BANK, WALTER G. WILSON CORPORATION, SHELL PETROLEUM CORPORATION, MARATHON PIPELINE COMPANY ET AL.

[No. 1-175A11. Filed August 25, 1975. Rehearing denied October 7, 1975. Transfer denied May 14, 1976.]

458

*David F. McNamar, Steers, Klee, Sullivan, McNamar & Rogers,* of Indianapolis, for appellants.

*Stephen Goldsmith, Donald E. Knebel, Barnes, Hickam, Pantzer & Boyd,* of Indianapolis, for appellee Marathon Pipeline Company, *James F. Hillis, Michael M. Disler, Hillis & Disler,* of Indianapolis, for appellee Shell Oil Company.

LOWDERMILK, J.—The plaintiffs-appellants, Myron H. Budnick and his wife, Sandra Budnick (Budnicks), brought this action to quiet title to a certain tract of land in Pike Township, Marion County. The Budnicks claimed title to the land as the successors-in-interest to Beverly Budnick (Sandra Budnick's mother) who had purchased the land at a 1970 tax sale.

Defendants-appellees Marathon Pipeline Company (Marathon) and Shell Petroleum Corporation (Shell), the principal defendants, held pipeline right-of-ways across the land of the Budnicks, both prior to and subsequent to this tax sale. These right-of-ways had been duly recorded in the appropriate records of Marion County.

The Budnicks claimed that the tax deed received from the county for the land in question was free and clear of all liens and encumbrances, including Marathon's and Shell's pipeline right-of-ways, pursuant to IC 1971, 6-1-57-3 (Burns Code Ed.), which provides, in relevant part, as follows:

> ". . . A deed executed pursuant to this section shall vest in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances except the lien of the state for taxes and special assessments accruing subsequent to the sale, and shall be prima facie evidence of the regularity of the sale of the real property therein described, of the regularity of all prior proceedings and of valid title in fee simple in the grantee of the deed. . . ."

The Budnicks also filed a second paragraph of complaint against Marathon and Shell, demanding possession of the land and asking for eviction of Marathon and Shell from the premises. After a change of venue, the trial court granted Marathon's and Shell's motions for summary judgment, and the Budnicks perfected their appeal.

The Budnicks claim that the trial court erred in its findings of fact and conclusions of law. The trial court granted Marathon's and Shell's motions for summary judgment and therefore this court must decide this case on the basis of the evidence contained in the record most favorable to the Budnicks. *Surratt* v. *Petrol, Inc.* (1974), 160 Ind. App. 479, 312 N.E.2d 487; *Podgorny* v. *Great Central Ins. Co.* (1974), 160 Ind. App. 244, 311 N.E.2d 640.

The Budnicks contend that from the above statute, it is clear that a tax deed vests in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances, and that the easement of record in this case is an encumbrance within the meaning of the statute, and thus any such easement was extinguished when the tax deed was issued. They cite *First Church of Christ* v. *Cox* (1911), 47 Ind. App. 536, 94 N.E. 1048, where the Indiana Appellate Court stated:

> ". . . 'Encumbrance' is a more comprehensive term than 'lien'. It includes liens, and also other burdens resting either on the real estate itself, or on its title, which tends to lessen its value or to interfere with its free enjoyment. Thus, a right of way or other easement, affecting real estate in favor of a person other than the owner or in favor of a dominant estate has been held to be an encumbrance. . . ."

The Budnicks argue that inasmuch as the court has held that an "easement" is an "encumbrance," at least for the purposes of a warranty deed, the clear import of this statute is to extinguish all "encumbrances" on a fee simple title except those specifically excluded in the statute.

The question presented, so far as we can determine, is one of first impression in Indiana, but it has been widely treated in other jurisdictions. The various cases are collected in Annot., 168 A.L.R. 529 (1947), and the supplemental decisions thereto. As this case involves statutory construction, the decisions of other jurisdictions are helpful to the extent that their analysis is applicable to the statute and facts in the case at bar.

Many of those decisions are distinguishable on the basis of the respective statutes involved. Some statutes provide

specifically that pipeline easements of record will survive the tax sale. Others are more general in form, but are still construed as allowing the easements to survive. Only a few states have provisions as narrow as the Indiana statute.

The jurisdictions that have statutes similar to our own rely on one basic test to determine whether the tax deed will cut off prior easements of record: If the easement was separately assessed and separately taxed, either to the dominant estate or in its own right, then the tax sale will not cut off the interest. If, however, the interest was not taxed separately, the whole fee will have passed with the tax deed, and all outstanding interests will be extinguished.

The rule is stated in *Alvin* v. *Johnson* (1954), 241 Minn. 257, 63 N.W.2d 22, wherein the court said:

> "All that could be assessed against the servient tenement was the fee minus the easement which had ceased to be a part of the servient estate. That is all the state has acquired and that is all it has to sell. The property assessed and the property conveyed must be the same. If property rights which are not included in the assessment are sold or extinguished by a tax sale, that would be a taking of property without due process of law."

The theory here is that the property interest conveyed pursuant to a tax deed must be identical to the property interest assessed to the delinquent taxpayer. If the easement is properly assessed to the owner of the easement, it cannot be assessed to the owner of the servient estate and cannot be conveyed in a tax sale of the servient estate.

We believe that the above rule is a correct statement of Indiana law. The statute provides that "[a] deed . . . shall vest in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances. . . ." The most natural reading of the statute would suggest that the Legislature intended that a tax deed should pass good title to the land that is being sold for non-payment of taxes. The tax title would seem to be in the nature of a new and independent grant from the sovereign authority.

By the same token, the Legislature did not contemplate that a new grant of title would be given to the holder of a tax deed where the land in question was not subject to taxation in the first instance. IC 1971, 6-1-57-14 (Burns Code Ed.), provides, in part:

"Proof required to defeat tax deed.—In all suits involving the title to real property claimed by virtue of a deed executed pursuant to this article [6-1-57-1—6-1-57-16] the person claiming adversely to such deed, in order to defeat the title conveyed thereby, shall be required to prove either (1) that the real property described in the deed was not subject to taxation at the date of assessment of the tax for which it was sold. . . ."

It is clear that the Legislature intended to give a new title to the land only if the land was properly taxed initially.

Construing this statute with the first statute set out above would result in a rule that the land would pass under the tax deed free and clear of all liens and encumbrances, but only if those liens and encumbrances were originally taxed to the land that is being sold. If any part of the estate was carved out previously, and *separately taxed* previously, then that separate interest would not be subject to the tax sale unless specifically so included because of its own delinquent tax payments. This distinction has been relied upon by several courts in resolving similar problems. *Tax Lien Co.* v. *Schultze* (1914), 213 N.Y. 9, 106 N.E. 751; *Harmon* v. *Gould* (1939), 1 Wash.2d 1, 94 P.2d 749; *Wolfson* v. *Heins* (1942), 149 Fla. 499, 6 So.2d 858.

In *Jackson* v. *Smith* (1912), 153 App. Div. 724, 138 N.Y.S. 654, a tax lien was stated to be "superior to and not subject to any claim, easement, charge, incumbrance, or interest of any kind. . . ." With respect to private easements of light, air and access over property to be foreclosed pursuant to a tax lien, the court said:

"It is unnecessary to determine the precise nature of a tax title. It doubtless is in the nature of a new and independent grant from the sovereign authority . . . but the assessment is the basis of it. The property assessed and

the property conveyed upon the tax sale must be the same. If the assessment is only of the servient estate, only that can be conveyed on a tax sale; and, vice versa, if the conveyance on the tax sale, or on the foreclosure of a tax lien, is of all the estate or interests in the land, freed from servitude as well as liens thereon, then the assessment must be based upon the land as land, regardless of servitude as well as liens. As has been shown, in making the assessment a deduction must be made for easements, whereas none is made for liens and the like interests." *Accord, Crawford* v. *Senasky* (1929), 128 Ore. 229, 274 P. 306; *Northwestern Improvement Co.* v. *Lowry* (1937), 104 Mont. 289, 66 P.2d 792; *Smith* v. *Smith* (1913), 21 Cal. App. 378, 131 P. 890.

The question to be answered, therefore, is whether the pipeline right-of-way is properly assessed to the pipeline company which holds the easement, or properly assessed to the owner of the servient estate.

The Public Utility Tax Act of 1949, IC 1971, 6-1-44-1 to 6-1-44-18 (Burns Code Ed.), authorizes the state board of tax commissioners and the local assessors to jointly assess "all property owned or used by public utility companies . . . including . . . pipeline companies. . . ." IC 1971, 6-1-44-2 (Burns Code Ed.). A "pipeline company" includes "any company engaged in the business of transporting or transmitting any gas or fluid (except water) through pipes." IC 1971, 6-1-44-3 (17). "All property, including all rights, franchises and privileges owned or used by any company . . . shall be valued by the commission using the unit method of valuation. The amount of the local assessment of fixed property shall be deducted from the total valuation and the balance shall be known as the distributable property which shall be assessed by the state board of tax commissioners." IC 1971, 6-1-44-5 (Burns Code Ed.). The act further provides:

"In the case of pipeline companies, the fixed property shall consist of tangible personal property not used as part of the distribution system, pumping or compressor stations, tanks, office buildings and any other buildings or structures not a part of a pipeline, and all land not constituting a part

of the pipeline right-of-way. The remainder of the property of such pipeline company shall be considered as distributable property of such company and shall be allocated or distributed between the taxing units in which the pipelines of such company may be located, on the basis of the ratio which *length of pipeline* in the taxing unit bears to the total length of pipeline of the system in the state." (Emphasis added.). IC 1971, 6-1-44-11(8) (Burns Code Ed.).

From the above provisions, it is clear that the pipeline companies are to be taxed on this right-of-way, as it is clearly a "right, franchise or privilege." The Budnicks agree that Marathon and Shell are taxed on their property, but contend that the tax is simply a tax on the pipe itself, and as such is only a personal property tax. They argue that all taxpayers pay several different types of tax, and just because Marathon and Shell pay a tax on their pipeline does not mean that Marathon and Shell are also paying a part of the tax due on the Budnicks' property, and thus not bound by the tax deed.

In support of their contention, the Budnicks filed two uncontradicted affidavits with the trial court. Mary McCloud, the Pike Township Assessor, stated in her affidavit:

"6. The entire amount of real estate tax assessed against the aforementioned parcel is assessed in the name of Myron H. and Sandra A. Budnick and no reduction of the property tax assessment is allowed for any easements held in the name of the Shell Oil Company or the Marathon Oil Company.

7. The property tax assessment on this parcel for the present owner and previous owner has not been reduced by the value of any easements thereon and the assessment in fact includes the value of the entire parcel of ground."

Carleton Phillippi, Chairman of the Indiana State Board of Tax Commissioners, stated:

"3. The assessment against the distributable property of the pipeline companies in the State of Indiana is assessed against the value of the pipe of said companies and that the value is based upon the age, size and length of said pipe, *and not on the value of right-of-way or easement.*" (Emphasis added.)

Since this is an appeal from the granting of a motion for summary judgment, the facts contained in these statements must be taken as true for the purposes of this appeal. It should be noted, however, that the law is to be determined by the court regardless of the interpretation of the law that may be contained within the said affidavits.

> We believe it is clear that the Legislature intended that the pipeline companies pay a separate real property tax on the total amount of right-of-way that they hold.

The statute specifically provides that *all* rights, franchises or privileges are to be valued under the unit system. Since the State is to determine the total value of the property to be taxed to the pipeline companies, some system had to be established so as to allocate this statewide assessment total among the various taxing units.

The specialized method of allocation used by the State to distribute the amount of assessment to the local taxing units consisted of a local valuation in each taxing unit of the fixed property (buildings, pumping stations, et cetera) situated within that unit, a subtraction of each of these local totals from the statewide unit value that was assigned to the company by the state board, and a determination of the remaining amount (consisting mostly of property that could not be easily valued by the local assessor.) This remaining amount, denominated "distributable property," was then allocated among the various taxing units according to a simple formula consisting of the ratio of the length of the pipeline in the taxing unit compared to the length of the pipeline statewide.

The pipeline length itself was used only as a method of allocation of the "distributable property." The value of the "distributable property" included much more than mere pipe —it included all sorts of property interests that by themselves were very difficult to evaluate. Thus, the right-of-ways in question here were taxed to Marathon and Shell, albeit by a specialized assessment technique.

The Legislature has recognized that one tract of land may be taxed to more than one owner, and that each of the different interests in a tract of land is in essence real property.

IC 1971, 6-1-20-4 (Burns Code Ed.) provides in part:

". . . Whenever, distinct from the ownership of the surface thereof, by deed, contract, reservation in any conveyance or otherwise, an estate is created in such land or in any mines or minerals therein, any and *all subservient interests or rights shall be deemed real property.*" (Emphasis added.)

An easement is an estate or interest in land, and as such, it is real property. *State* v. *Anderson* (1960), 241 Ind. 184, 170 N.E.2d 812; *Branson* v. *Studabaker* (1892), 133 Ind. 147, 33 N.E. 98; *Erie-Haven, Inc.* v. *First Church of Christ* (1973), 155 Ind. App. 283, 292 N.E.2d 837.

IC 1971, 6-1-29-9 (Burns Code Ed.) provides:

"Whenever a division or partition has been made, or other changes take place in the ownership of any lot or tract of land, *or any part thereof,* by conveyance, sale, devise or descent, the county auditor, on being satisfied thereof, shall transfer the same on the last assessment list, and apportion the same and the assessment thereof, with all delinquent taxes, to the several owners." (Emphasis added.)

Thus, Indiana recognizes that one tract of land may be taxed to several different owners. The Legislature could not have intended that two or more interests in the property should pass by a tax deed when only one of the owners is delinquent in his tax payments. Even if the holder of the easement or right-of-way were aware of a tax delinquency on the servient estate, he should not be made to come in and pay a delinquency on the entire tract just to preserve his right-of-way across one corner. We think it is clear that the tax sale passed only the interest that was subject to taxation, and that the easement in this case

was not subject to taxation by the local assessor, but only by the State Board of Tax Commissioners.

In regards to the affidavits set out above, we believe the decision in *Pfaff* v. *Terre Haute & I.R. Co.* (1886), 108 Ind. 144, 9 N.E. 93, is dispositive of the question. That case involved a taxing procedure similar to that now established for pipeline companies. There, the court said:

> "In the answer to appellee's complaint, it is alleged, that in fixing the values, the State board of equalization took into consideration only the tracks, and did not consider the value of the lots and lands, and the buildings thereon; and that the local authorities valued and assessed these. It is claimed that because of the alleged omission on the part of the State board, the local authorities had the right to make the valuation and assessment; and that if they had not, the appellee cannot succeed in this action, without first paying, or offering to pay, the taxes due. The difficulty with the contention is, that, so far as shown, appellee had paid all taxes that, in any legal sense, were due. The authority to value and assess the lots and lands which constitute a part of the right of way, or 'railroad track' was and is with the State board of equalization alone.
>
> The local authorities have no power to value and assess such property, and any valuation or assessment that they may attempt is utterly void. The railroad company can owe no taxes upon such property, except such as may be extended upon the valuation fixed by the State board.
>
> It is to be presumed that the State board will do its duty, and value the whole of the right of way, including the land, the tracks and superstructures, as it is alleged in the complaint was done; *but if it should fall short of its duty, as alleged in the answer, the local authorities have no power to do what that board, under the law, is alone authorized to do.*" (Our emphasis.) 108 Ind. 153, 154. *Accord, Lipman* v. *Shriver* (1958), 51 N.J. Supp. 356, 144 A.2d 37.

Thus, the township assessor had no right to tax this right-of-way. That being the case, the tax sale could only pass the interest that was subject to taxation, i.e., the servient estate. Whether or not the state board used the correct method of taxing the right-of-way is irrelevant. Since the local assessor

could not tax the right-of-way, the local tax sale of the property could not pass the right-of-way to the buyer.

There is one further problem in this case. The original easement granted to Shell provided that an additional pipeline could be laid over the easement if an additional consideration were paid. Shell exercised this right in 1969, and filed a receipt for payment of the additional consideration in the official records of Marion County. However, the payment was made to the record owner of the property at a time when the taxes were delinquent.

By the affidavit of James H. Hardin, submitted by Marathon and Shell, Mr. Hardin states that the tax sale was held for the particular real estate on August 10, 1970, for taxes not paid in the years 1967, 1968, and 1969. Thus, the receipt was filed at a time when the state held a tax lien on the property. The tax lien was superior to any rights that may have been granted by the record owner, and as such the subsequent holder of the tax deed takes the land free of any such burdens that may have attached.

Since we have already held that the tax deed in this case will take subject to the easement previously taxed and of record, Shell retains the right to use the land for its second pipeline, but only if it pays the additional consideration required under that original grant.

Judgment affirmed as modified.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 333 N.E. 131.