*1219
 
 OPINION
 

 Per Curiam:
 

 Appellant Thirteen South, Inc. (“Thirteen South”) argues that its purchase of a lot in a tax foreclosure sale extinguished real covenants burdening the lot. It brought this action against Summit Village, Inc., a neighborhood homeowners’ association (“the Association”), seeking to invalidate covenánts, including a covenant requiring the owner of the lot to pay dues to sustain neighborhood facilities and services. In a motion for preliminary injunction, Thirteen South asked the district court to enjoin the Association from selling the lot to satisfy a private lien for delinquent payments due the Association. The district court denied the motion. We hold that a tax sale does not extinguish covenants burdening neighboring lots in a subdivision. Accordingly, since Thirteen South enjoys no reasonable likelihood of prevailing on the merits of its claim at trial, we affirm the district court’s order.
 

 The Summit Village subdivision (“Summit Village”) was created in 1966. A Limited Partnership later recorded “Conditions, Covenants and Restrictions” (“CC&Rs”) covering lots in the subdivision. The CC&Rs created the Association to manage the subdivision, and required,
 
 inter alia,
 
 that lot owners pay assessments to the Association for the repair and maintenance of common areas, for the cost of recreational facilities, and for insurance premiums and other services, such as trash and snow removal. The CC&Rs also allowed the Association to levy a lien on a burdened lot to secure the payment of delinquent Association assessments, and they authorized judicial and extra-judicial sale to satisfy such liens.
 

 The lot in issue, number 471 (“the lot”), is a vacant, undeveloped lot in Summit Village. Prior to 1988, the owner of the lot failed to pay real property taxes assessed by the County. After expiration of the statutory redemption period, the county treasurer sold the lot in a tax foreclosure sale to Edward Dimmick. Dimmick then sold the lot to appellant, Thirteen South. In the
 
 *1220
 
 interim, the Association filed a private lien for nonpayment of Association dues, and proceeded with an extra-judicial sale of the lot to satisfy the lien. Thirteen South filed this action, arguing that it was not burdened by the CC&Rs, and sought to enjoin the sale of its lot through a motion for preliminary injunction.
 

 Thirteen South has shown that it would lose title to real property in an extra-judicial sale. Thus, it has met its burden of showing irreparable injury and inadequacy of legal damages.
 
 See
 
 Dixon v. Thatcher, 103 Nev. 414, 415, 742 P.2d 1029, 1029-30 (1987). However, since Thirteen South cannot show a reasonable likelihood of success on the merits of its underlying claim, its motion for preliminary injunction must fail.
 
 Id.
 

 When a property owner fails to redeem property within the statutory period through the payment of delinquent taxes, the county treasurer is authorized to sell the property, stripped of nearly all encumbrances, in a tax sale. NRS 361.595(1); 361.590(5) (the deed that the treasurer holds is free of all encumbrances, except public utility easements, district liens, and penalties and interest). Upon a tax sale, the treasurer conveys to a purchaser an “absolute deed, discharged of any trust.” NRS 361.595(4). Thirteen South argues that under these provisions the county treasurer received a deed free of the CC&Rs and conveyed an absolute deed to the purchaser, with the CC&Rs extinguished.
 
 [1]
 
 The Association claims that the covenants are separate property interests, and were not part of the lot sold in the tax sale.
 

 A sovereign may only convey in a tax sale an estate subject to delinquent taxes.
 
 See
 
 Tax Lien Co. v. Schultze, 106 N.E. 751, 752 (N.Y. 1914) (if non-assessed property right is sold in tax sale, government has taken property without due process of law); Hayes v. Gibbs, 169 P.2d 781, 786 (Utah 1946) (assessment is the basis of tax title; assessed interest only may be sold, or tax sale is a taking without due process). A separately valued and taxed interest may not be extinguished by a tax sale, so long as the taxes assessed to that interest are not delinquent.
 
 Id.
 
 Gener
 
 *1221
 
 ally, an easement or covenant is an interest in land separate from and “carved out” of a servient estate; in the majority of jurisdictions it survives a tax sale, provided that the servient and dominant tenements’ assessed values reflect the value of the covenant or easement.
 
 See, e.g.,
 
 Budnick v. Indiana National Bank, 333 N.E.2d 131, 134 (Ind. 1975) (easement); Schlafly v. Baumann, 108 S.W.2d 363, 368 (Mo. 1937) (covenant); Northwestern Improvement Co. v. Lowry, 66 P.2d 792, 795-96 (Mont. 1937) (covenant); Alamagordo Improvement Co. v. Prendergast, 91 P.2d 428, 431-32 (N.M. 1939) (covenant);
 
 See also
 
 Holly P. Rockwell, Annotation,
 
 Easement, Servitude, or Covenant as Affected by Sale for Taxes, 1
 
 A.L.R.5th 187 (1992) (collecting cases). This is true even in jurisdictions, with statutes similar to Nevada’s, that provide for conveyance of a “new and paramount” title “free of all encumbrances.”
 
 See Budnick,
 
 333 N.E.2d at 132 (easement survived although tax deed passed “an estate in fee simple absolute, free and clear of all liens and encumbrances”);
 
 Schlafly,
 
 108 S.W.2d at 368 (covenant survived after tax sale granted “absolute estate in fee simple”);
 
 Northwestern,
 
 66 P.2d at 794 (covenant survived tax sale although tax deed “ extinguished] all former titles and liens not expressly exempted . . .”);
 
 Alamagordo,
 
 91 P.2d at 429 (covenant survived tax sale although deed conveyed “new and paramount title in fee simple absolute . . . striking down all previous titles and interest in the property”). In addition, nearly three dozen courts have held that only title to previously assessed property may pass at a tax sale.
 
 See
 
 Rockwell, 7 A.L.R.5th at 213-30.
 

 We find the above authority and reasoning persuasive and look to Nevada’s valuation statute to determine the title conveyed. Nevada’s valuation statute provides that the taxable value of vacant land is “[t]he full cash value . . . considering the uses to which [the land] may lawfully be put,
 
 any legal or physical restrictions
 
 upon those uses, . . .
 
 and the uses of other land
 
 in the vicinity.” NRS 361.227(1)(a)(1) (emphasis added). “Full cash value” is “the most probable price which property would bring in a competitive and open market . . . .” NRS 361.025. Thirteen South has conceded that the fair market value of its lot is “$28,000 to $32,000, assuming said lot to be [subject to the CC&Rs],” but that absent private and public restrictions the fair market value would be $70,000. Thirteen South thus concedes that the property’s “full cash value,” and therefore its tax assessment, decreases when the CC&Rs are considered. We assume that the assessor valued the property in accordance with Nevada law. Accordingly, the lower assessed value of Thirteen South’s lot reflects the burden of the covenants, the benefit of which was a
 
 *1222
 
 separate property interest enjoyed by the neighboring property owners. We also presume that neighboring lots were taxed at the full cash value of their land, “consisten[t] with the use to which the [land was] being put.” NRS 361.227(1)(a)(2) (valuation statute for occupied land). Thus, the value of the covenants was assessed to the dominant tenements, and the CC&Rs were not destroyed by the sale to Thirteen South’s predecessor-in-interest. In line with the above authority and reasoning, we hold that real covenants survive a sale of property for delinquent taxes.
 
 [2]
 

 Thirteen South argues that this court should ignore the reasoning above and the well-considered opinions of a majority of courts. Instead, we should construe the statute in an absolute manner, identifying covenants as encumbrances. Thirteen South argues that to do so would further the tax collection policies of the state of Nevada. Apparently, if covenants were extinguished in a tax sale, then the beneficiaries would protect their interests by paying the delinquent taxes of their neighbors. Even in a situation such as this, where a homeowners’ association may have the funds to pay delinquent taxes, this position is untenable.
 

 Thirteen South has failed to address whether neighboring landowners even have the right, or the power, under the statute to redeem property through paying delinquent taxes.
 
 See
 
 NRS 361.565 (notice of delinquent taxes and right to redemption shall be served if the delinquency is not cured
 
 “by the taxpayer or his successor in interest”)
 
 (emphasis added). Neighboring landowners do not have the power to compel reconveyance, as they are not included in the list of several persons authorized to do so.
 
 See
 
 NRS 361.585(3), (4). Finally, there is a conspicuous absence in the statute of a mechanism for protecting the rights of the various landowners for their respective contributions, or setting forth their rights and obligations once they have “redeemed” the property. This indicates it was not the intended policy of the legislature to compel, or even encourage, homeowners to satisfy their neighbors’ tax bills.
 

 Finally, it is not good policy to encourage the payment of delinquent taxes by one not individually responsible for them through the threat of losing a valuable property interest.
 
 See
 
 District of Columbia v. Capital Mortg. & Title Co., 84 F.Supp. 788, 790 (D.Col. 1949) (one cannot expect the owners of a
 
 *1223
 
 dominant estate to pay taxes on an adjoining servient property in order to preserve their interest in an easement); Budnick v. Indiana Nat. Bank, 333 N.E.2d 131, 136 (Ind. 1975) (holder of an easement could not be required to pay a delinquency on the entire servient estate to preserve his interest). In this case, the owners of dominant estates have paid taxes on the increased values of their properties over the years that the CC&Rs have been in force. It would be inequitable to require these same property owners to expend more money to protect that interest because a neighboring property owner became delinquent on his separate and distinct property tax burden.
 

 In addition, the tax policy of Nevada is to collect taxes on the full cash value of land, that being defined as the price the land will command in the open market. NRS 361.025. The legislature could not have intended to free a single property owner from covenants that increase the value of dozens of other lots in order to encourage the tax sale at issue. The sale of a lot free of CC&Rs in the middle of a planned community might increase the value to the tax sale purchaser of his lot. He could then disregard the planned development scheme, and carry on any business he chose. However, this would devalue other lots, ultimately resulting in less tax revenue over the ensuing years. There is no evidence in the statute that the legislature intended this result.
 

 We hold that the benefit of a real covenant is a separately taxed interest, the value of which is assessed to the dominant tenement under Nevada law. It is therefore not part of the parcel which may lawfully be conveyed by the sovereign in a tax foreclosure sale. As a result, the CC&Rs affecting the lot at issue in this case were not extinguished by the tax sale.
 

 Accordingly, Thirteen South is not entitled to preliminary injunction, and we affirm the district court’s denial of the motion.
 

 [1]
 

 Thirteen South relies on our prior interpretation of these provisions.
 
 See
 
 Casazza v. A-Allstate Abstract Co., 102 Nev. 340, 344, 721 P.2d 386, 389 (1986). In
 
 Casazza,
 
 we stated that “[i]n order to enable the treasurer to give the purchaser at the tax sale ‘an absolute deed’ to the property, it was necessary that the treasurer hold a title ‘free of all encumbrances,”’ and that “the deed to the treasurer from the receiver was necessarily ‘free of all encumbrances.’”
 
 Id.
 
 This is an accurate reading, in general, of the statute. However, we note that our discussion of the relevant provisions focused not on what constituted an “encumbrance” within the meaning of the statute, but rather explained the interplay of the two sections as they related to the “reconveyance” procedure.
 
 See
 
 NRS 361.585. The issues in this case require more than a textual analysis of the statute.
 

 [2]
 

 Although not raised and briefed by the parties, we hold that affirmative obligations to pay money in a planned subdivision, which also necessarily alfect the market values of the servient and dominant tenements, are also accounted for in the assessment of property values, are taxed accordingly, and survive a tax sale.
 
 See also
 
 Lake Arrowhead Community Club, Inc. v. Looney, 770 P.2d 1046 (Wash. 1989) (holding that affirmative obligation to pay money survived tax sale).