**Mark JACOBS, Plaintiff and Appellant,**

**v.**

**Wilford L. HAFEN and Joann B. Hafen,
Defendants and Appellees.**

**No. 950065.**

Supreme Court of Utah.

May 24, 1996.

David Nuffer, St. George, for plaintiff.

Lamar J. Winward, St. George, for defendants.

ZIMMERMAN, Chief Justice:

Plaintiff Mark Jacobs appeals from a trial court judgment quieting title to disputed property in defendants Wilford L. Hafen and Joann B. Hafen under the doctrine of boundary by acquiescence. We reverse.

Neither party challenges the trial court's findings of fact, and we assume them to be correct. Jacobs and the Hafens are record owners of adjoining property on opposite sides of the county line between Garfield and Kane Counties.[1] The county line runs east to west along a section and a township line. Jacobs, who purchased his property in 1991, is the record owner of land in Kane County, to the south of the line. The Hafens, who purchased their property in 1982, are record owners of land in Garfield County, to the north of the line.

An old fence, which has been in existence for more than 40 years, cuts through Jacobs' property. It is located about 360 feet south of the county line and runs east to west for about 1,300 feet and then north to the county line. The fence borders the southern edge of a pasture that has been used for cattle grazing since at least 1952. Since purchasing their property, the Hafens have grazed cattle on that portion of Jacobs' property north of the fence and south of the county line.

In 1991, Jacobs brought this action against the Hafens to quiet his title to the pasture area between the fence and the county line. The Hafens' primary defense was based on the doctrine of boundary by acquiescence. The trial court found that the Hafens' and Jacobs' properties had a common owner until 1973. The trial court also found that once separate ownership was established in April of 1973, the parties and their predecessors in interest had acquiesced in the fence as the property line until Jacobs filed the present suit, a period of approximately 18½ years. Partly because three surveys conducted in the late 1970s and early 1980s had indicated

---

1. For ease of reference, we have appended a map to the end of this opinion.

that the county line rather than the fence was the boundary, the court ruled that under the doctrine of boundary by acquiescence, the 18½ year period was sufficient to quiet title in the Hafens.

Jacobs appealed to this court, and we poured the case to the court of appeals. That court reversed, holding that the three surveys could not, as a matter of law, constitute an "unusual circumstance" that our case law suggests can justify shortening the 20–year period of acquiescence ordinarily required to establish boundary by acquiescence. *Jacobs v. Hafen*, 875 P.2d 559, 562 (Utah.Ct.App.1994). The appeals court remanded the case to the trial court for additional findings regarding unusual circumstances, observing that if the trial court were unable to make such findings, "Jacobs would be entitled to a judgment quieting title in him." *Id.*

On remand, the trial court held an additional evidentiary hearing at which Wilford Hafen was the sole witness.[2] In its findings of fact, the trial court found the following specific facts "unusual under the circumstances":

a. The property had been surveyed by the same surveyor on three different occasions.

b. The entire parcel was fenced and the entire surrounding area was open range.

c. The pasture had been used for grazing cows back as far as 1952.

d. The pasture fence had been in the same location since at least 1952.

e. The defendants built a house on the property, located within the pasture, said house actually being located in the Garfield County portion of the property.

f. None of the titled owners, including all of their predecessors in interest, ever asked the Defendants not to use the entire fenced parcel of the pasture from the time of the original conveyance to the present time.

g. The property was basically used for grazing from 1952 to the present.

h. Title companies had been utilized throughout the applicable period of time and specifically two title companies were in the Plaintiff's chain of title.

i. Plaintiff's predecessors in interest had quit claimed all the property on several occasions, even utilizing the title company, however, had only issued one Warranty Deed to the property in sections 35 and 36, which deed went to the Defendant's predecessor in interest in 1973.

j. The section corner is located within the fenced pasture and is clearly marked.

k. After the 1973 conveyances, the Plaintiff's predecessors in interest kept their property outside the fenced pasture and did not contest or disturb the Defendants' or their predecessors['] in interest possession of the entire pasture up through the time of the filing of this lawsuit.

l. There were a number of different property owners throughout the 18½ year period of time . . . .

m. The Defendants built their home in the pasture in approximately 1982 and 1983.

n. The Defendants improved the property by taking a culinary water line across the subject parcel of property in Kane County and into the home they had built.

o. The Defendants and their predecessors had improved the property within the pasture and specifically the Kane County portion of said property with an irrigation system, had maintained ditches on the Kane County side of the property, had irrigated the Kane County side of the property, and utilized a water holding pond located outside of the property by *running* the water through the Kane County portion of the property and onto that portion of the pasture, and that portion of the pasture north of the county line.

The trial court again quieted title to the disputed property in the Hafens, concluding that "the facts and circumstances of this case

2. Jacobs and his counsel were not present at the evidentiary hearing due to counsel's admitted oversight. The trial court later denied Jacobs' motion for a rehearing but allowed Jacobs to supplement the record by filing a proffer of testimony. However, the record does not reveal that Jacobs made any proffer.

taken together as a whole are unusual and uncommon when viewed as a whole so as to justify the court in holding that the doctrine of boundary by acquiesce[nce] applies to this situation, with an 18½ year period of time of acquiescence." We retained the appeal from this second trial court ruling to resolve an important question of Utah law.

Jacobs presents essentially two issues: (i) Does Utah's boundary by acquiescence doctrine apply when the period of acquiescence is less than 20 years, and (ii) if so, do the trial court's findings of fact support application of the doctrine in this case when the period of acquiescence was only 18½ years? Both issues present questions of law that are reviewable nondeferentially for correctness. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994). Our disposition of Jacobs' first issue dispenses with any need to reach the second issue. We turn to Jacobs' first issue.

 The elements of boundary by acquiescence are (i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a long period of time, (iv) by adjoining landowners. *Van Dyke v. Chappell*, 818 P.2d 1023, 1025 n. 1 (Utah 1991); *Clair W. & Gladys Judd Family Ltd. Partnership v. Hutchings*, 797 P.2d 1088, 1089 (Utah 1990); *Staker v. Ainsworth*, 785 P.2d 417, 420 (Utah 1990); *Goodman v. Wilkinson*, 629 P.2d 447, 448 (Utah 1981). As this court noted when we first adopted this equitable doctrine, boundary by acquiescence is "a rule of repose with a view of the quieting of titles" which rests on the sound public policy of preventing strife and litigation and promoting stability in boundaries. *Holmes v. Judge*, 31 Utah 269, 87 P. 1009, 1014 (1906). Because Utah has no long-term adverse possession statute, the doctrine serves as a primary legal mechanism for settling boundary disputes in this state. *See* James H. Backman, *The Law of Practical Location of Boundaries and the Need for an Adverse Possession Remedy*, 1986 B.Y.U. L.Rev. 957, 969.

 We have long observed that the doctrine requires acquiescence in a boundary "for at least 20 years." *King v. Fronk*, 14 Utah 2d 135, 378 P.2d 893, 897 (1963). At the same time, we have also repeatedly said that under "unusual circumstances," we may permit the doctrine to be invoked upon the running of some shorter period. *Hobson v. Panguitch Lake Corp.*, 530 P.2d 792, 795 (Utah 1975). We have cautioned that such unusual circumstances would arise only in "the rarest of cases." *King*, 378 P.2d at 897. In fact, in the 90 years that we have been applying the doctrine in Utah, we have never been presented with circumstances sufficiently "unusual" to warrant a departure from the 20–year requirement. Thus, the exception exists in name only.

The time has come for us to weigh the benefits of retaining the stated "unusual circumstances" exception against the strong policies underlying the requirement that 20 years pass before the boundary by acquiescence doctrine is available. The probable reason the stated exception was originally articulated, and the only reason to retain it now, is to preserve judicial flexibility in the event that we encounter one of those "rarest of cases" referred to in *King*. While initially it may have been prudent to retain that discretion, the passage of many decades and many cases has taught us enough about the doctrine's operation with a 20–year–minimum time requirement to make us feel comfortable that the discretion to apply a shorter time period is unnecessary. This is not an unexpected development. Often appellate courts need repeated exposure to the way a legal doctrine operates in the real world before they firmly settle the law. *See Pena*, 869 P.2d at 938–39 (noting that appellate courts may contract or expand judicial discretion "in response to things we learn over time").

We note that forty or more state courts do not retain the equitable flexibility to shorten the possessory period needed to quiet title when they apply periods of repose fixed by adverse possession statutes. Backman, *supra*, at 959 & n. 15. While this is not a direct argument against retaining the unusual circumstances exception, it does suggest that most states successfully settle boundary disputes without it.

More to the point, the continued availability of the exception conflicts with the basic purposes of the boundary by acquiescence doctrine as it has come to exist in Utah. The 20–year period of acquiescence has served to make the doctrine function like a formal statute of limitations, one that the public has presumed notice of and must conform its actions to. *See King,* 378 P.2d at 896–97. If the 20–year requirement is to continue to function fairly as such a statute of limitations, it must be fixed so that parties can order their affairs with predictability. As with any other statutory limitations period, parties need a time certain within which they can assert their ownership rights. *Cf. Horton v. Goldminer's Daughter,* 785 P.2d 1087, 1091 (Utah 1989) ("[S]tatutes of limitation are intended to compel the exercise of a right of action within a reasonable time....").

Under this operative regime, if we were to permit the unusual circumstances exception to be used to cut short the time within which landowners may assert their rights, we would create much potential for unfairness. One who is using another's property will be tempted to counter any quiet title claims brought before, and in reliance upon, the running of the 20 years with an attempt to persuade a judge that under the circumstances, an 18– or 19–year period of acquiescence, for example, is more equitable than a 20–year period. Originally, when this court settled on 20 years as the period needed for acquiescence, that choice was to some degree arbitrary.[3] An 18–year or a 22–year period could as well have been chosen to fulfill the doctrine's purpose. Hence, the preservation of an equitable "unusual circumstances" exception. But having settled on 20 years, and having applied this requirement consistently for a very long period of time, we conclude that it has acquired equitable standing of its own. Given this fact, it is fairer to repudiate the unusual circumstances exception and to subject everyone to the same period of acquiescence. This will best achieve the repose, stability of title, and prevention of litigation that the boundary by acquiescence doctrine should foster.

We therefore hold that establishment of boundary by acquiescence requires (i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a period of at least 20 years, (iv) by adjoining landowners. Because the Hafens were able to prove acquiescence for only 18½ years, their claim fails and title to the disputed property should be quieted in Jacobs. We therefore reverse the trial court's judgment and remand this case for the entry of a judgment quieting title in Jacobs.

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON, JJ., concur.

---

3. This court has recognized, however, that the 20–year period of acquiescence is not without analagous precedent. Fifty-seven years after we first adopted the doctrine, we noted that it "has kinship to the concept of settling titles by prescription after 20 years' assertion of title coupled with occupancy." *King v. Fronk,* 14 Utah 2d 135, 378 P.2d 893, 897 (1963).