2001 UT App 145

Jerald E. MASON; Miriam P. Mason; Lewis A. Peterson and Betty Jo Peterson, as trustees of the Lewis and Betty Jo Peterson Family Trust; Spencer F. Eccles; Cleone P. Eccles; John H. Bryan; and Catherine P. Bryan, Plaintiffs and Appellees,

v.

Sheldon Leroy LOVELESS and Janice P. Loveless, as co-trustees of the Sheldon and Janice Loveless Trust; Tod Aleamoni; Anna King; Patrick Jenkins; Dean Verholtz; and Joseph L. Adamson, Defendants and Appellants.

Formen Corporation and Backman Title Company, Defendants and Cross-claimants.

No. 990929–CA.

Court of Appeals of Utah.

May 3, 2001.

George K. Fadel, Bountiful, for Appellants.

Steven H. Gunn, Katie A. Eccles, Ray Quinney & Nebeker; Ronald G. Russell, Parr Waddoups Brown Gee Loveless; and Ralph J. Marsh, Backman Clark & Marsh, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., JACKSON, Associate P.J. and BILLINGS, J.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendants appeal the trial court's ruling quieting title to a parcel of land in favor of plaintiffs. Defendants also appeal the trial court's grant of summary judgment in favor of cross-defendants, Formen Corporation (Formen) and Backman Title Company (Backman). We affirm.

## BACKGROUND

¶ 2 This appeal arises from a judgment of the trial court, sitting without a jury; thus, "[w]e recite the facts in the light most favorable to the court's determination." *Wilkinson Family Farm, LLC v. Babcock,* 1999 UT App 366, ¶ 2 n. 1, 993 P.2d 229. This case involves a parcel of land in Milburn, Sanpete County, Utah. In 1938, L.L. Peterson (Peterson) purchased 1750 acres in Sanpete County (the Ranch). According to Peterson's deeds, the Ranch included the entire eastern halves of sections 13 and 24. These two half sections comprised 640 acres.

¶ 3 Before Peterson purchased the Ranch, and as early as 1929, a fence separated the eastern and western halves of sections 13 and 24. The northern end of the fence is within one foot of one-half mile from where the Bureau of Land Management (BLM) placed a United States General Land Office (US-GLO) brass cap monument, marking the northeast corner of section 13 during a 1929 survey. The southern end of the fence is within four feet of one-half mile from where the BLM placed a USGLO brass cap monument marking the southeast corner of section 24 during the 1929 survey.

¶ 4 The fence is visible, extends for two miles, and traverses north to south in a nearly straight line over steep terrain containing dense underbrush that is difficult to move through and, in some areas, impenetrable. It deviates only slightly from true north-south over its entire length. The terrain within a few hundred feet of the fence is distinctly more level and less overgrown, providing a much easier place to have built the fence than the fence's actual location. Property owners on both sides of the fence used the fence to separate ranching activities.

¶ 5 From 1989 to 1995, Peterson transferred the Ranch to his children, who, along with their spouses, are the plaintiffs in this case. From 1929 until 1997, when this lawsuit was filed, Peterson and his predecessors believed the fence marked the property line of the Ranch and treated it as such by grazing livestock up to, but not beyond, the fence, and posting "No Trespassing" signs thereon.

¶ 6 Some time in 1980, Formen bought property to the west of the fence. Formen conducted a survey of the property and filed a subdivision plat with the county. Formen's survey and subdivision plat for the Hideaway Valley Subdivision shows that the eastern boundary of the subdivision lies 204 feet to the east of the fence in the north, and that the boundary runs southwesterly and intersects the fence 1–3/4 miles to the south. After recording the subdivision plat, Formen sold the lots on the eastern edge of the subdivision. Backman held title to the lots for Formen, executed the subdivision plats, and issued special warranty deeds to initial purchasers of the lots.

¶ 7 Defendants Sheldon LeRoy Loveless and Janice P. Loveless,[1] Tod Aleamoni, and Dean Verholtz obtained title to their lots by special warranty deed.[2] All of these purchasers are referred to herein as the "Special Warranty Deed Defendants." Defendants Patrick Jenkins, Anna King, and Joseph L. Adamson obtained title to their lots by tax deeds. These purchasers are referred to herein as the "Tax Deed Defendants."

¶ 8 In 1997, plaintiffs filed a quiet title action against defendants, including Formen and Backman. The Special Warranty Deed and Tax Deed Defendants then cross-claimed against Formen and Backman. Before trial, Formen and Backman moved for summary judgment on defendants' cross-claims. The trial court granted both Backman and Formen summary judgment on defendants' cross-claims. A bench trial on the remaining issues between plaintiffs and the Special Warranty Deed and Tax Deed Defendants

---

**1.** Sheldon LeRoy Loveless and Janice P. Loveless purchased Lot 315 together with Ned T. Loveless and Gladys R. Loveless. In 1988, Ned T. Loveless and Gladys R. Loveless transferred ownership to Sheldon LeRoy Loveless and Janice P. Loveless by quitclaim deed. Shortly thereafter, Sheldon LeRoy Loveless and Janice P. Loveless transferred ownership by quitclaim deed to Sheldon LeRoy Loveless and Janice P. Loveless, Co

Trustees of the Sheldon and Janice Loveless Trust. Therefore, the Loveless's claim is really under a quit claim deed, although their predecessors received a special warranty deed.

**2.** Defendants Aleamoni and Verholtz are initial purchasers, receiving their deeds from Backman.

followed. The trial court entered findings of fact and conclusions of law, and entered judgment quieting title in favor of plaintiffs. The trial court's Findings of Fact state, in part:

6. Prior to 1929 someone built a continuous north/south fence ("the Fence") on or near the middle of Sections 13 and 24. The Fence consisted of cedar posts, barbed wire and wire net. The northern end of the Fence was located almost exactly one-half mile west from the northeast corner of Section 13. The Fence was visible and straight.

7. Witnesses at trial testified that at various times they observed the Fence in its present location, including 1929, 1961, 1979, 1980 and on many occasions since 1980.

. . . .

9. Since 1929[,] the owners of the land on both sides have occupied and used their land up to, but not beyond, the Fence. No evidence was presented at trial that owners of land in the western halves of Sections 13 and 24 had objected to the location of the Fence prior to 1980.

10. In about 1980[,] . . . Formen Corporation subdivided the western halves of Sections 13 and 24 into a number of lots. The subdivision plat which was prepared in 1980 by R.K. Johanson shows that the eastern edge of those subdivision lots on the eastern edge of the Subdivision are located east of the Fence: i.e., that the Fence is located within the boundary of the Subdivision. A 1998 survey prepared by Ryan W. Savage ("the Savage Survey") shows that the Fence is located along the western boundary of the Ranch and that the Subdivision lots encroach onto Plaintiffs' property east of the Fence. Thus[,] the Johanson survey shows that the Fence encroaches on the Subdivision and the Savage Survey shows that the Subdivision lots encroach on the Ranch property.

. . . .

12. To the extent that Johanson and Savage Surveys are inconsistent with one another, the Court finds that the Savage Survey is accurate. However, the Court makes no findings as to whether Sections 13 and 24 are "full" or "short" sections. The Johanson survey of the Subdivision is not accurate in that it did not correctly identify the boundary between the east and west halves of Sections 13 and 24.

13. The owners of property located on either side of the Fence acquiesced in the use of the Fence as a boundary between property owners no later than 1929 until 1980. During that time the Fence was used as a substantial enclosure or monument.

Based on these findings, the trial court concluded that plaintiffs had established a boundary by acquiescence.

¶ 9 Defendants appeal both the trial court's order quieting title in favor of plaintiffs and the trial court's grant of summary judgment in favor of Formen and Backman.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Defendants challenge the trial court's grant of summary judgment in favor of cross-defendants Formen and Backman. "A party is entitled to summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Robinson v. Tripco Inv., Inc.,* 2000 UT App 200,¶ 9, 21 P.3d 219, 398 Utah Adv. Rep. 26, *cert. denied, Robinson v. Tripco,* No. 20000763, 2000 Utah LEXIS 179, at *1 (Dec. 14, 2000); *see also* Utah R. Civ. P. 56(c). " ' "On an appeal from a grant of summary judgment, we review the trial court's legal conclusions for correctness and grant them no deference." ' " *Robinson,* 2000 UT App 200 at ¶ 9, 21 P.3d 219 (quoting *Holmes v. American States Ins. Co.,* 2000 UT App 85,¶ 9, 1 P.3d 552 (citation omitted)).

¶ 11 Defendants also challenge the trial court's finding of boundary by acquiescence and order quieting title in plaintiffs. A trial court's determination that "a given set of facts gives rise to a determination of acquiescence . . . is reviewable as a matter of law." *Wilkinson Family Farm, LLC v. Babcock,* 1999 UT App 366,¶ 6, 993 P.2d 229. However, when the "determination is highly fact sensitive," as in this case, we grant "the trial court some measure of discretion." *Id.*

## ANALYSIS

### I. Summary Judgment

#### A. Special Warranty Deed Defendants

*Special Warranty Deed vs. General Warranty Deed*

¶ 12 Special Warranty Deed Defendants argue they were entitled to indemnification by Formen and Backman by virtue of their special warranty deeds. In making this argument, these defendants essentially argue that a special warranty deed is the same as a general warranty deed. We disagree. A special warranty deed is "[a] deed in which the grantor covenants to defend the title against only those claims and demands of the grantor and those claiming by and under the grantor." Black's Law Dictionary 424 (7th ed.1999). A warranty deed, in contrast, is "[a] deed containing one or more covenants of title; esp., a deed that expressly guarantees the grantor's good, clear title and that contains covenants concerning the quality of title, including warranties of seisin, quiet enjoyment, right to convey, freedom from encumbrances, and defense of title against all claims." *Id.; see also* Utah Code Ann. § 57–1–12 (2000) (describing form and effect of warranty deed in Utah). Stated somewhat differently,

> If the grantor covenants to warrant and defend title to the property against all claims whatsoever, regardless of their source, the covenant is a general warranty. However, if the grantor covenants to warrant and defend the title only against claims arising by, through or under the grantor, it is a special warranty. *Under a special warranty, if the claim arose under, or due to the actions of, a prior owner of the land, the covenantor has no liability.* However, under a general warranty, if a claim is validly asserted against the property, regardless of who is responsible for its existence, the covenantor is liable.

14 Richard R. Powell, Powell on Real Property § 81A.06[2][d] [iii], at 81A–122–23 (Michael Allan Wolf ed., 2000) (emphasis added)

[hereinafter Powell]. The difference is that grantors of special warranty deeds "only promise that no title defects have arisen or will arise *due to the acts or omissions of the grantor*," 11 Thompson on Real Property, Thomas Edition, § 94.07(b)(2)(i), at 81–82 (David A. Thomas ed., Supp.2000), whereas grantors of general warranty deeds promise to defend *"all claims."* Powell § 81A.06[2][d][iii], at 81A–122–23 (emphasis added).

¶ 13 In the present case, it is undisputed that plaintiffs' boundary by acquiescence claim arose well before Formen purchased the property adjacent to plaintiffs' property. As such, this "claim arose under, or due to the actions of, a prior owner of the land" and, therefore, as a matter of law, Foreman and Backman are not liable. *Id.*

*Merger Doctrine*

¶ 14 Special Warranty Deed Defendants also argue that their real estate purchase agreements provide that they take title "free and clear of all ... encumbrances," including the boundary dispute in this case, and therefore Foremen and Backman are liable. However, as Foreman and Backman point out, the doctrine of merger bars this claim.[3] " 'It is well settled that the merger doctrine applies in Utah.' " *Robinson v. Tripco Inv., Inc.,* 2000 UT App 200, ¶ 11, 21 P.3d 219, 398 Utah Adv. Rep. 26 (quoting *Maynard v. Wharton,* 912 P.2d 446, 449 (Utah Ct.App.1996)). Under the merger doctrine, the terms of the underlying contract for the sale of land are "merged into the deed and thereby become extinguished and unenforceable" upon delivery and acceptance of the deed. *Dobrusky v. Isbell,* 740 P.2d 1325, 1326 (Utah 1987). Recognized exceptions to the merger doctrine are fraud, mutual mistake, ambiguity, and the existence of collateral rights in the contract of sale. *See Robinson,* 2000 UT App 200 at ¶ 11, 21 P.3d 219; *see also* Annotation, *Deed as Superseding or Merging Provisions of Antecedent Contract Imposing Obligations Upon the Vendor,* 38 A.L.R.2d 1310, 1315 (1954).

**3.** "[W]hether the doctrine of merger applies ... present[s] a question of law that we review for correctness affording no particular deference to the trial court." *Maynard v. Wharton,* 912 P.2d 446, 449 (Utah Ct.App.1996).

However, none of these exceptions is asserted in this case. Thus, the merger doctrine precludes this claim. *Cf. Embassy Group, Inc. v. Hatch*, 865 P.2d 1366, 1373 (Utah Ct.App.1993) ("Because we have found no exception that precludes application of the merger doctrine in the instant case, we therefore conclude that the conveyance at closing represents the final merged agreement of the parties.").

### B. Tax Deed Defendants

¶ 15 Tax Deed Defendants contend they took title free and clear of the disputed boundary claim. There is conflicting authority as to whether a sale of real property by tax deed extinguishes an adverse claim such as an easement or covenant. *See, e.g.,* Holly Piehler Rockwell, Annotation, *Easement, Servitude, or Covenant as Affected by Sale for Taxes*, 7 A.L.R.5th 187, 203 (1992) (stating "there is an apparent conflict of authority as to the effect of a sale of real property to foreclose a lien for delinquent taxes"). The Utah Supreme Court acknowledged this conflict in *Hayes v. Gibbs*, 110 Utah 54, 169 P.2d 781 (1946), stating that "[a]lthough the authorities are not uniform on the subject ... ordinarily a tax sale does not divest easements charged upon the property sold." *Id.* at 786. The defendant in that case averred "that she obtained title [to her property] through a tax sale, and therefore took [title] free and clear of all restrictions." *Id.* at 783. Thus, the defendant contended that she did not have to comply with a covenant that restricted commercial buildings. *See id.* at 782–83. In holding that easements and restrictive covenants survive a tax sale, the court stated, "[i]f the person assessed as owner had no title to the easement, certainly the tax sale could not pass title thereto," and thus, the property assessed and the property conveyed must be the same. *Id.* at 786.

¶ 16 That same analysis applies to the present case. Here, the trial court found that a boundary by acquiescence claim was established as early as 1949, and Tax Deed

Defendants' predecessors in interest became owners of the adjoining land much later. Accordingly, Tax Deed Defendants' tax deeds did not extinguish the preexisting boundary by acquiescence claim. To hold otherwise would contravene the Fifth Amendment's protection against taking of property without due process of law. *See id.* ("If property rights ... are sold or extinguished by a tax sale, there would be a taking of property without due process of law."); *see also* U.S. Const. amend. V ("No person shall ... be deprived of life, liberty, or property, without due process of law[.]"). Accordingly, Tax Deed Defendants' deeds did not convey title free and clear of the preexisting boundary by acquiescence, and the trial court properly granted summary judgment to Formen and Backman on this issue.[4]

### II. Boundary by Acquiescence

¶ 17 Boundary by acquiescence is a long established doctrine in Utah. *See Holmes v. Judge*, 31 Utah 269, 87 P. 1009, 1014 (1906) (applying boundary by acquiescence doctrine for first time in Utah); *Suitzgable v. Worseldine*, 5 Utah 315, 15 P. 144, 145 (1887) (mentioning boundary by acquiescence doctrine for first time in Utah). Its purpose is to establish "stability in boundaries, repose of titles, and the prevention of litigation." *Hales v. Frakes*, 600 P.2d 556, 559 (Utah 1979). To establish boundary by acquiescence, a claimant must show " '(i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a long period of time, (iv) by adjoining landowners.' " *Orton v. Carter*, 970 P.2d 1254, 1257 (Utah 1998) (quoting *Jacobs v. Hafen*, 917 P.2d 1078, 1080 (Utah 1996)). "[F]ailure to meet any *one* of the elements of the doctrine defeats the boundary." *Hales*, 600 P.2d at 559.

¶ 18 Defendants argue there was insufficient evidence for the trial court to determine

---

4. Because we have found that Tax Deed Defendants do not prevail as a matter of law on their appeal of summary judgment against Formen and Backman, we need not address plaintiffs' argument that defendants are barred from bringing their claim because they have failed to raise it in their pleadings and they have not tried the issue with the consent of the court. *See* Utah R. Civ. P. 15(a) (requiring written consent of adverse party to amend pleadings).

that the doctrine of boundary by acquiescence applied because defendants did not mutually acquiesce in the line as a boundary. Thus, we need only address that element.

¶ 19 "Mutual acquiescence in a line as a boundary has two requirements: that both parties recognize the specific line, and that both parties acknowledge the line as the demarcation between the properties." *Wilkinson Family Farm, LLC v. Babcock*, 1999 UT App 366,¶ 8, 993 P.2d 229. A boundary by acquiescence, thus, requires more than mere acquiescence in use; it requires acquiescence to a line as a boundary. *See id.; see also Hales*, 600 P.2d at 559 (holding boundary by acquiescence cannot be established when a fence is "erected as a barrier to control livestock, not as a boundary, and [is] purposely offset"); *Wright v. Clissold*, 521 P.2d 1224, 1227 (Utah 1974) (holding boundary by acquiescence not established when landowner built fence on his own property to contain cattle and both he and adjoining property owner knew fence was not situated on a boundary that "was in doubt or uncertain"). Thus, as we have previously noted, "the importance of the intended purpose of a fence" and an adjoining property owner's knowledge thereof "has remained consistent through cases decided [by Utah appellate courts]." *Wilkinson*, 1999 UT App 366 at ¶ 10 n. 2, 993 P.2d 229.

¶ 20 Defendants contend that the trial court erred in considering their predecessors' failure to object to the fence as a boundary of their property. Defendants argue that this court eliminated indolence as a basis for establishing a boundary by acquiescence in *Wilkinson*. Thus, defendants implicitly contend that their silence does not give rise to mutual acquiescence. Defendants misread *Wilkinson*. In that case, this court considered the purpose of the fence in determining whether the parties mutually acquiesced in the fence as the boundary. *See id.* at ¶ 9. In holding that "the parties did not acquiesce in the ... fence as a boundary," *id.* at ¶ 13, this court stated in a footnote that

acquiescence in use is not the same as acquiescence in a boundary line. *See id.* at ¶ 13 n. 3. Our footnote is merely dicta, and it does not, as defendants assert, eliminate indolence as a basis for establishing mutual acquiescence. As previously indicated, our footnote merely stands for the proposition that "[a]cquiescence in use is not equivalent to acquiescence in a boundary." *Id.* Furthermore, our supreme court has acknowledged that " '[a]cquiescence' is more nearly synonymous with 'indolence,' or 'consent by silence.' " *Lane v. Walker*, 29 Utah 2d 119, 505 P.2d 1199, 1200 (1973). Thus, our settled case law is contrary to defendants' argument and clearly provides that acquiescence may be established by silence.

¶ 21 Here, the evidence adduced at trial supports the trial court's finding of acquiescence.[5] That evidence includes that (i) the fence has existed since at least 1929; (ii) the owners on both sides of the fence acquiesced in it as a boundary for at least twenty years; (iii) the fence was used as a substantial enclosure or monument; and, (iv) the fence begins and ends near the north and south brass cap markers, which the USGLO placed there in 1929. Additionally, the fence is straight, although it would have been easier to construct it to better fit the terrain, the fence was difficult to maintain because of its location, there were "No Trespassing" signs on the fence, and herds were run on both sides of the fence over the years. This evidence is sufficient to support the trial court's finding of acquiescence.

## CONCLUSION

¶ 22 Special Warranty Deed Defendants' claim that they are entitled to indemnification fails as a matter of law because their deeds only warranted against those claims arising under, or due to the actions of the grantor, and the boundary dispute arose well before Formen purchased the property. Likewise, Special Warranty Deed Defendants' claim that they took title free and clear under their real estate purchase agree-

---

5. In addition, the trial court found that the Savage Survey was accurate. At oral argument, plaintiffs declined to rely on this finding as there was no survey done or presented as evidence of the actual acreage of the parcels as divided by the fence. Accordingly, the trial court declined to say if the lots were square.

ments fails as a matter of law because, under the doctrine of merger, defendants' real estate contracts merged into their deeds and thereby were extinguished and unenforceable.

¶ 23 Tax Deed Defendants' claim that they took title free and clear of the disputed boundary line also fails as a matter of law because defendants cannot receive greater title than their predecessors in interest owned, and the boundary claim arose well before defendants' predecessors owned the land that was conveyed by the tax deeds.

¶ 24 Finally, defendants' claim that the trial court's finding of acquiescence is unsupported by the evidence also fails. The evi-dence supports the trial court's finding and there is no error in its conclusion that a boundary by acquiescence was established.

¶ 25 Therefore, we affirm.

¶ 26 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, JUDITH M. BILLINGS, Judge.