2005 UT App 410

**H.C. MASSEY and Betty Massey, Plaintiffs and Appellants,**

v.

**Kenneth A. GRIFFITHS; BKB, L.L.C.; 12X12, L.L.C.; Aaron B. Buttars; Brenda L. Buttars; Adele B. Lewis; Questar Gas Company; Wilson Irrigation Co.; Frances E. Hanks; Kimel P. Fisher; and John Does 1 through 100, Defendants and Appellees.**

No. 20040650–CA.

Court of Appeals of Utah.

Sept. 29, 2005.

Frank S. Warner, Warner Law Firm, Ogden, for Appellants.

Ray G. Martineau, Anthony R. Martineau, Brett D. Cragun, Lloyd R. Jones, Petersen & Hansen, and Douglas L. Stowell, Stowell & Associates PLLC, Salt Lake City, and M.

Darin Hammond, Smith Knowles & Hamilton, Ogden, for Appellees.

Before BILLINGS, McHUGH, and ORME, JJ.

## OPINION

McHUGH, Judge:

¶ 1 H.C. and Betty Massey appeal the trial court's grant of summary judgment in this quiet title action in favor of BKB L.L.C. (BKB), 12X12 L.L.C. (12X12), Aaron B. Buttars, Brenda L. Buttars, Adele B. Lewis, and Kenneth A. Griffiths (collectively, Defendants). The Masseys contend on appeal that their tax deeds are superior to Defendants' deeds. We affirm.

## BACKGROUND

¶ 2 The subject of this case is real property located in Weber County, Utah. At a tax sale, the Masseys purchased four separate but contiguous parcels of this property. Two parcels were conveyed to the Masseys by tax deeds dated June 12, 1986, and recorded June 13, 1986, and two were conveyed by tax deeds dated June 8, 1992, and recorded June 10, 1992.

¶ 3 Defendants are successors in interest or current occupiers of property located in the same quarter section of Weber County as the Masseys' property. Lewis sold her property to her daughter and son-in-law, the Buttarses, on December 5, 1994, but Lewis continues to live on the property. Griffiths conveyed his parcel of land to BKB by warranty deed dated and recorded January 24, 1994. BKB in turn conveyed the Griffiths property to 12X12 by quit claim deed October 26, 2000, and the deed was recorded November 1, 2000.

¶ 4 Griffiths's property, now owned by 12X12, is located directly north of the Buttarses' property. A "very old fence" has historically served as the boundary between Griffiths's property and the Buttarses' property. However, the properties the Masseys acquired at the tax sale, according to their legal descriptions, straddle the fence and overlap the properties historically occupied by Griffiths ·and the Buttarses. This overlap is the crux of this conflict.

¶ 5 The record demonstrates that there is no dispute that Defendants occupied their respective properties for twenty years prior to the Masseys bringing this quiet title action. It is also undisputed that Defendants have consistently paid taxes on the property described in the notices issued to them by the county and that Defendants did not receive notice of the tax sale at which the Masseys obtained their tax deeds.

## ISSUE AND STANDARD OF REVIEW

¶ 6 In determining whether the trial court properly granted summary judgment in favor of Defendants after determining that their deeds were superior to the Masseys' tax deeds, "we view the facts, and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *GNS P'ship v. Fullmer*, 873 P.2d 1157, 1159 (Utah Ct.App.1994) (quotations and citation omitted). "A grant of summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 1160; *see* Utah R. Civ. P. 56(c).

## ANALYSIS

¶ 7 In general, "a tax sale extinguishes all prior private claims on the property." *A.C. Fin., Inc. v. Salt Lake County*, 948 P.2d 771, 776 (Utah 1997) (discussing *Union Cent. Life Ins. Co. v. Black*, 67 Utah 268, 247 P. 486, 489 (1926)). "The statute providing for tax sales implicitly recognizes this rule and the underlying holding of *Black* with regard to real property taxes by defining the title granted at a tax sale as a 'fee simple' title—i.e., one unencumbered by other claims." *Id.* (citing Utah Code Ann. § 59–2–1351.1(9)(a) (1996) ). A tax deed therefore usually takes precedence over other interests.

¶ 8 To be valid, however, a tax sale must be conducted according to the strict requirements of the governing statutes. *See Tintic Undine Mining Co. v. Ercanbrack*, 93 Utah 561, 74 P.2d 1184, 1187 (1938); *see also Page v. McAfee*, 26 Utah 2d 208, 487 P.2d 861, 862 (1971) (holding tax sale invalid be-

cause it was not conducted by the county auditor, as required by statute). The Utah Supreme Court stated in *Fivas v. Petersen* that

> it is necessary to keep in mind the fundamental principles which have been established since time immemorial underlying adjudications on tax titles. The forfeiture of one's property for the nonpayment of taxes has always been regarded as a harsh procedure, which may work great hardships on property owners. An awareness of this fact invariably pervades the decisions in such cases, with the result that, in the interpretation and application of statutory requirements antecedent to forfeiture of property, they are construed in favor of the taxpayer and against the taxpaying authority, and are strictissimi juris.

5 Utah 2d 280, 300 P.2d 635, 637 (1956) (footnotes omitted) (holding tax deed to be invalid because the county treasurer failed to mail valuation notices to property owners, as required under statute for valid tax sale).

■ ¶ 9 Elemental to a valid proceeding is a *"failure to pay a tax assessed against the property* [.] . . . [N]o validity can attach to any sale except of the property assessed and delinquent for failure to pay the tax levied on the assessment as made." *Ercanbrack*, 74 P.2d at 1189 (emphasis added); *see also* Utah Code Ann. § 59–2–1351(1)(a) (2004) ("Upon receiving the tax sale listing from the county treasurer, the county auditor shall select a date for the tax sale for all real property *on which a delinquency exists* that was not previously redeemed . . . ." (emphasis added)); *Thirteen S. Ltd. v. Summit Vill., Inc.*, 109 Nev. 1218, 866 P.2d 257, 259 (1993) ("A sovereign may only convey in a tax sale an estate subject to delinquent taxes.").

■ ¶ 10 No dispute of material fact exists as to whether Defendants paid the property taxes assessed on the property they had long occupied. At a pretrial conference conducted via telephone, the Masseys' attorney conceded that "the property in question that we claim under the tax deeds has historically been occupied by the [D]efendants and their predecessors in interest . . . for at least 20 years" and that Defendants "have paid taxes on the tax notices that were issued to them by the county." Several other experts and witnesses similarly testified by affidavit that Weber County had no interest to convey at the tax sale because property taxes were not delinquent.[1]

¶ 11 The Masseys also argue there is a material dispute about whether the property occupied by Defendants, up to the "very old fence" line, precisely matches the legal descriptions of the property in the tax notices paid by Defendants. The court below determined that if a slight discrepancy existed, it was not material because the equitable doctrine of boundary by acquiescence would apply.[2] *See Mason v. Loveless*, 2001 UT App 145, ¶ 17, 24 P.3d 997. We agree. Even if a small portion of the land was not described in the tax notices, it became a part of Defendants' parcels. Moreover, the Masseys still have not produced any evidence that Defendants were delinquent in paying property taxes assessed on this portion or that they had an opportunity to rectify any delinquency. *See Royal St. Land Co. v. Reed*, 739 P.2d 1104, 1107 (Utah 1987) (holding that

---

1. Even if the Masseys were able to produce evidence that Defendants were delinquent in paying their taxes, the sale would be void for another reason. Utah law requires that notice of a tax sale be provided to "the last-known recorded owner, the occupant of any improved property, and all other interests of record." Utah Code Ann. § 59-2-1351(2)(a) (2004). It is undisputed that Defendants, the occupiers of the property, received no notice of the sale.

2. "To establish boundary by acquiescence, a claimant must show (i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a long period of time, (iv) by adjoining landowners." *Mason v. Loveless*, 2001 UT

App 145, ¶ 17, 24 P.3d 997 (quotations and citation omitted). The trial court concluded, based on the undisputed facts presented by the parties, that

> [t]he boundaries between the Griffiths Property [and] the Buttars[es] Property . . . have been clearly marked and identified, as they are now, by long established fence lines, which fence lines have been recognized and acquiesced in by the respective owners of the Griffiths Property [and] the Buttars[es] Property . . . as the actual boundaries between their respective properties, for a period of not less than twenty continuous years immediately preceding the initiation of the above-entitled action.

taxpayer is only required to pay taxes levied and assessed on property even though assessment may not cover all uses of property or entire area of property). Thus, this factual dispute is not material and summary judgment was proper.

## CONCLUSION

¶ 12 The trial court properly granted summary judgment in favor of Defendants because no dispute of material facts exists regarding Defendants' payment of taxes on the disputed property. Therefore, Weber County could not have conveyed valid tax deeds to the Masseys. We affirm.

¶ 13 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and GREGORY K. ORME, Judge.