2009 UT App 355

William R. SMITH and Ludean A. Smith, as trustees of the Smith Family Revocable Trust; Mack G. Smith and Carolyn Smith, as trustees of the Mack G. Smith and Carolyn Smith Revocable Trust; J. Lynn Smith, as trustee of the J. Lynn Smith Living Trust; and Cindy S. Hatch, an individual, Plaintiffs and Appellees,

v.

SECURITY INVESTMENT LTD, a Utah limited partnership, Defendant and Appellant.

No. 20080790–CA.

Court of Appeals of Utah.

Dec. 3, 2009.

George K. Fadel, Bountiful, for Appellant.

Wade R. Budge, Troy L. Booher, and Chris J. Martinez, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., ORME, and DAVIS, JJ.

## MEMORANDUM DECISION

ORME, Judge:

¶ 1 This case involves a dispute over a two-acre parcel of land to which Defendant Security Investment LTD claims record title, but to which Plaintiffs (collectively, the Smiths) claim ownership under the doctrine of boundary by acquiescence. A fence, constructed in a nearly straight line, follows the record boundary line between several properties, including the properties owned by Security and the Smiths, excepting the relevant two-acre parcel of land that is on the Smiths' side of the fence. The bench trial was limited to the factual issue of whether the fence served as a boundary or a barrier, and thus centered on the legal issue of whether the parties mutually acquiesced in the fence as a boundary. The court had already determined that there were no disputed material facts concerning the other requisite elements of boundary by acquiescence, which elements had been established on summary judgment.[1]

¶ 2 The trial court made a factual finding that "[t]he [Smiths] have always believed that the fence is the boundary between their property and [Security's] property" but made no corresponding finding relating to Security's belief. Security claims that the trial court erred in concluding both parties mutually acquiesced in the fence as a boundary when the trial court did not specifically find that Security believed the fence was, or treated the fence as, a boundary. We conclude that the factual findings[2] as a whole

1. The trial court made these determinations in its denial of the Smiths' motion for summary judgment. See generally Utah R. Civ. P. 56(d) ("If on motion under this rule judgment is not rendered upon the whole case ..., the court ... shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy.... Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."); id. R. 52(a) ("The court shall ... issue a brief written statement of the ground for its decision on all motions granted under Rule[] ... 56 ... when the motion is based on more than one ground."). Security raises, in a cursory manner, the issues of whether the trial court erred in limiting the trial to the boundary versus barrier issue and whether it properly relied on Cindy Hatch's affidavit in making its summary judgment ruling. Any such challenges have been inadequately briefed and we decline to address them. See Utah R.App. P. 24(a)(9) (setting forth briefing requirements for an appellant's argument); Ball v. Public Serv. Comm'n (In re Application of Questar Gas Co.), 2007 UT 79, ¶ 40, 175 P.3d 545 (indicating courts may decline to address inadequately briefed arguments).

2. Security concedes that the trial court's factual findings are supported by record evidence but then appears to challenge certain factual findings. To the extent Security intended to challenge certain factual findings, any such chal-

support the conclusion that Security "impliedly consent[ed], or acquiesce[d]" in the fence as the boundary. *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 24, 96 P.3d 935 (citation and internal quotation marks omitted).

■ ¶ 3 Under Utah's boundary by acquiescence doctrine, a party is no longer required to establish that the true boundary is "unknown," as *Florence v. Hiline Equipment Co.*, 581 P.2d 998, 1000 (Utah 1978), required, *see Ault v. Holden*, 2002 UT 33, ¶ 19, 44 P.3d 781, or that there is "objective uncertainty" regarding the true boundary, *Staker v. Ainsworth*, 785 P.2d 417, 424 (Utah 1990) ("overrul[ing] the fifth [boundary by acquiescence] requirement of objective uncertainty contained in *Halladay v. Cluff*"). *See Halladay v. Cluff*, 685 P.2d 500, 503–05 (Utah 1984). Instead, to establish boundary by acquiescence, a party must establish only four elements: "(i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a long period of time, (iv) by adjoining landowners." *RHN Corp.*, 2004 UT 60, ¶ 23, 96 P.3d 935 (citation and internal quotation marks omitted). *See id.* ¶ 30 (stating the "long period of time" element "mean[s] at least twenty years").

■ ¶ 4 For the "mutual acquiescence" element, the Utah Supreme Court has defined "[t]o acquiesce" as "to 'recognize and treat an observable line, such as a fence, as the boundary dividing the owner's property from the adjacent landowner's property.'" *Id.* ¶ 24 (citation omitted). *See Mason v. Loveless*, 2001 UT App 145, ¶ 19, 24 P.3d 997 ("'Mutual acquiescence in a line as a boundary has two requirements: that both parties recognize the specific line, and that both parties acknowledge the line as the demarcation between the properties.' A boundary by

acquiescence, thus, requires more than mere acquiescence in use; it requires acquiescence to a line as a boundary.") (citation omitted). "Acquiescence is a 'highly fact-dependent question,' and 'acquiescence, or recognition, may be tacit and inferred from evidence, i.e., the landowner's actions with respect to a particular line may evidence the landowner impliedly consents, or acquiesces, in that line as the demarcation between the properties.'" *RHN Corp.*, 2004 UT 60, ¶ 24, 96 P.3d 935 (citations omitted).

■ ¶ 5 "[V]arious landowner actions [may] evidence … acquiescence in a visible line as a boundary." *Id.* ¶ 25. For instance, "[o]ccupation up to, but never over, the line is evidence of acquiescence," but "occupation by itself may in some cases be insufficient to establish acquiescence." *Id.* "Acquiescence may also be shown by silence, or the failure of a party to object to a line as a boundary," *id.*, particularly when a fence "appears to be a boundary," *Lane v. Walker*, 29 Utah 2d 119, 505 P.2d 1199, 1200 (1973) ("[T]he test to establish the boundary by 'acquiescence' necessarily need not be based on mutual 'intent.' 'Intent' is not synonymous with 'acquiescence'.... 'Acquiescence' is more nearly synonymous with 'indolence,' or 'consent by silence,'—or a knowledge that a fence or other monuments appears to be a boundary,—but that no one did anything about it[.]"). *See Mason*, 2001 UT App 145, ¶ 20, 24 P.3d 997 ("[O]ur settled case law … clearly provides that acquiescence may be established by silence."). *Cf. Ault*, 2002 UT 33, ¶ 20, 44 P.3d 781 ("[R]ecord property owners are not required to take legal action or otherwise 'oust' someone adversely occupying their property to maintain their legal rights in their property. *They must only take some action manifesting that they do not acquiesce or recog-*

---

lenges have not illuminated fatal flaws in the trial court's reasoning or determinations. *See West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991) (detailing marshaling requirement). Notably, Security points out that Mack Smith's testimony showed that he might have known that two acres of Security's property was on the Smiths' side of the fence within the relevant twenty-year period. The Smiths, however, indicate that the relevant testimony referred to a different portion of land than is the subject of this appeal—a contention that

Security failed to respond to when it opted not to file a reply brief. And while discussing this testimony at oral argument, Security did not specifically respond to the Smiths' reassertion that this testimony was irrelevant. In any event, Mack Smith's testimony did clearly indicate that the fence was the only boundary he ever knew. And Cindy Hatch stated in her affidavit that, at least since 1978, all the Smiths believed that the fence was the boundary. This evidence supports the trial court's factual finding that the Smiths always believed that the fence was a boundary.

*nize the particular line, e.g., a fence, as a boundary* between the properties.") (emphasis added) (citation omitted).[3]

¶ 6 Additionally, "knowledge of the true boundary is *relevant* to a determination of whether a party acquiesced in a particular line as the boundary. . . . [S]uch factual knowledge is properly considered, and in fact *may* take the dispute out of the reach of boundary by acquiescence."[4]  *Wilkinson Family Farm, LLC v. Babcock,* 1999 UT App 366, ¶ 13, 993 P.2d 229 (emphasis added). *See Ault,* 2002 UT 33, ¶ 19, 44 P.3d 781 ("In other words, to acquiesce, a landowner must recognize and treat an observable line, such as a fence, as the boundary dividing the owner's property from the adjacent landowner's property, *regardless of whether the landowner knows where the actual boundary lies or whether the boundary is uncertain.*") (emphasis added).  And finally, the fence's purpose is also an important consideration in determining acquiescence.  *See Mason,* 2001 UT App 145, ¶ 19, 24 P.3d 997.

¶ 7 The factual findings show that the fence in question followed a nearly straight line, was constructed along the record boundary between several different properties, and only deviated from the record boundary with regard to the disputed two-acre parcel. The fence in actuality, then, served as the true boundary for the overwhelming majority of all property it touched.  And, therefore, its apparent purpose,[5] with

---

3. As pointed out by Security, some Utah cases employ language that is inconsistent with the rules announced in the cases cited in the text because they indicate that a plaintiff must show inaction plus additional supportive facts to establish acquiescence and that a record owner is not required to take any action to maintain a claim to property it owns. *See Brown v. Milliner,* 120 Utah 16, 232 P.2d 202, 208 (1951) ("The fact that a landowner allows others to share with him the use of his land does not necessarily signify a disclaimer of ownership.  And this is perhaps even more true when, as in the instant case[,] the location of the true boundary does not appear to have been known to the adjoining owners.  A person should be presumed to claim title to all the land called for by his deed unless it clearly appears otherwise."); *Glenn v. Whitney,* 116 Utah 267, 209 P.2d 257, 260 (1949) ("The mere fact that a fence happens to be put up and neither party does anything about it for a long period of time will not establish it as the true boundary."); *Argyle v. Jones,* 2005 UT App 346, ¶ 14, 118 P.3d 301 (stating that "to establish acquiescence, [the plaintiff] was required to show more than inaction on the part of the [defendants]"). *See also Brown v. Jorgensen,* 2006 UT App 168, ¶¶ 16–18, 136 P.3d 1252 (determining there was no mutual acquiescence in the fence as a boundary when the plaintiffs only "subjectively believed that the [f]ence was the property line" without ever communicating such belief to the defendant, the trial court found that the defendant's action in requesting a survey " 'show[ed] an unwillingness to acknowledge the fence as the boundary,' " and "[t]he trial court concluded that 'the purpose of the fence was to contain livestock' ") (second alteration in original); *Argyle,* 2005 UT App 346, ¶¶ 3–4, 15, 118 P.3d 301 (determining facts supported no acquiescence in a fence as a boundary when the defendants "had 'minimal' contact with the disputed property for the purpose of maintaining a well" on the disputed property, the defendants purchased the disputed property at a tax sale after the defendants and the plaintiff's predecessor in interest had disputed who owned the property and it was determined neither of them owned the property, the defendants had knowledge of the true boundary, and the defendants paid taxes on the property after purchasing it).  Our case law clearly shows, however, that a determination of "acquiescence is a 'highly fact-dependent' " matter.  *Jorgensen,* 2006 UT App 168, ¶ 14, 136 P.3d 1252 (citation omitted).  Furthermore, in this case, the fact that the fence appeared to be a boundary is something in addition to pure silence, and *Ault v. Holden,* 2002 UT 33, 44 P.3d 781, as well as *Lane v. Walker,* 29 Utah 2d 119, 505 P.2d 1199 (1973), support the proposition that when the facts show that a fence appears to be a boundary, silence or lack of objection to an adjoining landowner's use of a disputed parcel of land are facts that impliedly show acquiescence in the fence as a boundary.  *See Ault,* 2002 UT 33, ¶ 20, 44 P.3d 781; *Lane,* 505 P.2d at 1200.

4. Security's contention that "[k]nowledge of the true boundary defeats a claim in acquiescence" is accordingly unavailing because case law clearly reflects that, although knowledge is *relevant* and *may* defeat acquiescence, it does not invariably defeat acquiescence.  *See Ault v. Holden,* 2002 UT 33, ¶ 19, 44 P.3d 781; *Wilkinson Family Farm, LLC v. Babcock,* 1999 UT App 366, ¶ 13, 993 P.2d 229.  Furthermore, we also disagree that the relationship between belief and acquiescence is an issue of first impression in Utah, because as indicated in the case law we cite, the relevance or importance of knowledge or intent in analyzing acquiescence has already been considered.  *See Ault,* 2002 UT 33, ¶ 19, 44 P.3d 781; *Lane v. Walker,* 29 Utah 2d 119, 505 P.2d 1199, 1200 (1973); *Wilkinson Family Farm, LLC,* 1999 UT App 366, ¶ 13, 993 P.2d 229.

5. Security claims that the purpose of the relevant portion of the fence could not have been to serve as a boundary when the relevant portion of land

regard to the disputed two-acre parcel, was also to serve as a boundary. *Cf. Van Dyke v. Chappell,* 818 P.2d 1023, 1027 (Utah 1991) ("Additional evidence that provides further support for the finding that the fence was intended as a boundary [is] the fact that the fence was in line with the rest of the fences that ran across the valley."). The findings also show that since 1978, the Smiths used the disputed two-acre parcel for farming and grazing while Security made no use whatsoever of the disputed parcel and never objected to the Smiths' use of the disputed parcel.

¶ 8 With the fence appearing to denote a boundary of the disputed parcel, Security's silence, inaction, and failure to object to the Smiths' use of the two acres is highly significant. So too is the Smiths' treatment of the fence as a boundary, along with Security's complete lack of use of the disputed property with no objective actions supporting that it claimed ownership of the disputed parcel.[6] These factors readily support the trial court's conclusion that Security impliedly consented to, or acquiesced in, the fence as a boundary, regardless of whether Security subjectively intended to do so or knew the true record boundary to be otherwise.[7] *See generally RHN Corp. v. Veibell,* 2004 UT 60, ¶¶ 25, 29, 96 P.3d 935 (discussing that objective uncer-

tainty regarding the true boundary is no longer required, that silence can establish acquiescence, and that "[o]ccupation up to" a fence may support acquiescence in the fence as a boundary); *Ault v. Holden,* 2002 UT 33, ¶ 20, 44 P.3d 781 (stating that record property owners "must . . . take some action manifesting that they do not acquiesce"); *id.* ¶ 19 (indicating acquiescence may be shown "regardless of whether the landowner knows where the actual boundary lies or whether the boundary is uncertain"); *Lane,* 505 P.2d at 1200 (indicating a landowner may " 'consent by silence,' " or inaction when "a fence . . . appears to be a boundary").

¶ 9 Furthermore, as observed in *Provonsha v. Pitman,* 6 Utah 2d 26, 305 P.2d 486 (1957), sometimes when it is not economically feasible to fence around a small portion of land that is part of a large tract, a landowner "may . . . prefer[ ] to establish what might have been a not too accurate boundary and to have been content that it should be the dividing line, rather than to expend a sum that undoubtedly would have exceeded the value of the land involved." *Id.* at 487. Security's tenant's testimony explaining that they chose not to fence in the disputed two-acre parcel

---

was conveyed to Security in 1951, after the fence was reconstructed in 1949. What is important for purposes of our analysis, however, is the apparent purpose of the fence during the requisite twenty-year period following the Smiths' ownership of their land, i.e., the twenty years after 1978.

**6.** *Ault v. Holden* indicates that a conversation in which a landowner informs a neighboring landowner of ownership of some property on the other side of the fence and that the fence does not serve as a boundary, would defeat acquiescence. *See* 2002 UT 33, ¶ 21, 44 P.3d 781. And in this case, one factual finding indicates that Security's tenant told the Smiths' predecessor in interest that, by the terms of the lease, the tenant was paying to rent two acres on the other side of the fence that the tenant was not using. The trial court, however, specifically found that neither Security nor its tenant ever informed the Smiths of this fact, and the factual findings clearly show the requisite twenty-year period was met following the 1978 date when the Smiths obtained their interest in the relevant land.

**7.** While the trial court did not explicitly state that Security acquiesced in the fence as a boundary,

such a conclusion is readily inferred from the trial court's finding that the fence's purpose was to be a boundary and its legal conclusion that all the elements of boundary by acquiescence were met. *Cf. Salt Lake County v. Metro W. Ready Mix, Inc.,* 2004 UT 23, ¶ 21, 89 P.3d 155 (" '[A]n appellate court may affirm a trial court's ruling on any proper grounds, even though the trial court relied on some other ground.' To do so, however, the facts established in the record must be sufficient to support the alternative ground.") (alteration in original) (citations omitted); *Uhrhahn Constr. & Design, Inc. v. Hopkins,* 2008 UT App 41, ¶ 22, 179 P.3d 808 ("[W]e are reluctant to remand for a correction of the factual findings because . . . our doing so can be characterized as a meaningless exercise given that we can readily see how the trial court reached its determination based on its implicit factual findings."); *id.* ("[A] failure to make factual findings does not require remand if the error is harmless, which can occur [in] two ways: (1) if the undisputed evidence clearly establishes the factor or factors on which the findings are missing, or (2) even given controverted evidence . . . if the absent findings can reasonably be implied[.]") (second alteration and omission in original) (citation and internal quotation marks omitted).

because doing so did not make economic sense comports with the sentiment expressed in *Provonsha*, and may well explain Security's apparent apathy concerning the two acres—at least until local land values increased.[8] Importantly, the tenant also stated, "I never once worried about the two acres." Such a deliberate decision not to cordon off the relevant portion of land—or to put a gate in the existing fence so as to make some use of it [9]—also suggests that Security tacitly acquiesced in the fence as a boundary, which it appeared to be. *See RHN Corp.*, 2004 UT 60, ¶ 24, 96 P.3d 935 (indicating acquiescence "may be tacit and inferred from evidence") (citation and internal quotation marks omitted).

¶ 10 Finally, Security argues that the Smiths' claim of boundary by acquiescence is defeated by their constructive notice of the true boundary line, arising from recorded documents. The Utah Supreme Court has definitively rejected this theory.[10] *See id.* ¶ 29 ("[T]he ... constructive notice argument is reminiscent of the objective uncertainty requirement that we eliminated from the boundary by acquiescence cause of action.... We eliminated this fifth requirement because it makes boundary by acquiescence less practical, further restricts what was already a restrictive doctrine, and effectively eliminate[s] boundary by acquiescence as a viable doctrine for settling property disputes in Utah. We reject the ... claim that constructive notice of the true boundary ... precludes a showing of acquiescence[.]") (second alteration in original) (citations and internal quotation marks omitted).

¶ 11 Affirmed.

8. The land in question is in Bountiful and has consistently been used for farming or grazing. Counsel indicated at oral argument that the property's value recently increased as a result of its proximity to the new Legacy Highway.

9. Livestock needs to be fenced in; a pumpkin patch does not.

10. Accordingly, this argument is "not warranted by existing law," was not made as part of "a good faith argument to ... reverse existing law," and is therefore frivolous. Utah R.App. P. 33(b).

¶ 12 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and JAMES Z. DAVIS, Judge.

Because it represents such a minor part of Security's appeal, however, it does not render the appeal itself frivolous, and we decline the Smiths' request for an award of attorney fees under rule 33(a). *See generally id.* 33(a) ("Except in a first appeal of right in a criminal case, if the court determines that a motion made or appeal taken under these rules is either frivolous or for delay, it shall award just damages, which may include ... reasonable attorney fees, to the prevailing party.").